**Winford GREEN and Mary Green, Plaintiffs,**

v.

**FARMERS INSURANCE CO. INC., et al., Defendants.**

**No. Civ. 98–3088.**

United States District Court, W.D. Arkansas, Harrison Division.

July 13, 1999.

---

Frank H. Bailey, Bailey Law Firm, Mountain Home, AR, for plaintiff.

Jon P. Robinson, Benson, Robinson & Wood, Fayetteville, AR, Steven B. Davis, Davis & Goldie, Harrison, AR, for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Senior District Judge.

Plaintiffs commenced this civil action seeking a declaratory judgment that coverage exists for damages Winford Green ("Green") incurred as a result of an automobile accident. Currently before the court is the motion for summary judgment brought on behalf of separate defendant Farmers Insurance Company ("Farmers"). For the reasons set forth below, the motion will be denied.

### I. FACTS

On December 22, 1996, Green was stopped in a 1980 Volkswagen Rabbit ("Rabbit"), when a 1991 Pontiac Firebird ("Firebird") struck the rear of the Rabbit. The Rabbit was owned by "Windy's Used Cars," an Arkansas general partnership of

which both plaintiffs are partners. *See Farmers' Exhibit "B;" Farmers' Exhibit "D,"* at 49–50.

Plaintiffs were insured at the time of the accident through an automobile insurance policy issued by Farmers. The policy specifically provided coverage for a 1970 Antique Chevrolet Malibu ("Malibu"). In addition, the policy provided uninsured and underinsured motorist coverage. Plaintiffs assert that the uninsured motorist provision of the policy provides coverage for the damages that resulted from the accident.[1]

The policy contains the following provision regarding uninsured motorists:

> [w]e will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured person.** The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

*Farmers' Exhibit "A,"* at 6.

The policy contains an exclusion, however, that states "[t]his coverage does not apply to **bodily injury** sustained by a person ... [w]hile **occupying** any vehicle owned by you or a **family member** for which insurance is not afforded under this policy or through being struck by that vehicle." *Id.,* at 7. Further, an endorsement attached to the end of the policy states that: "[u]ninsured motorist coverage ... does not apply to **damages** arising out of the ownership, maintenance, or use of any vehicle other than **your insured car** ..., which is owned by or furnished or available for the regular use by you or a **family member.**" *Id.* Pursuant to the restricted use endorsement attached to the policy, the Malibu was the only vehicle within the meaning of **"your insured car"** for purposes of the policy. *Id.*

Farmers asserts that there is no coverage under the policy for the damages suffered by plaintiffs for two reasons. First, Farmers relies on the provision of the policy that excludes damages sustained while occupying a vehicle owned by plaintiffs for which insurance is not afforded under the policy. Farmers takes the position that because the accident occurred while Green was occupying the Rabbit—a vehicle owned by plaintiffs but for which insurance was not afforded under Farmers's policy—coverage is specifically excluded. Farmers contends that although "Windy's Used Cars" held title to the Rabbit, a partnership cannot own property as an entity under Arkansas law, and, thus, the plaintiffs, as the general partners, are the actual owners of the Rabbit and the exclusion applies.

Plaintiffs dispute the contention that a partnership cannot own property under Arkansas law. Rather, plaintiffs assert that a partnership can own property in its own name and, thus, because they were not the owners of the Rabbit, the exclusion does not apply.

Second, Farmers seeks to deny coverage based on the regular use exclusion in the policy. Namely, Farmers asserts that because Green had available to him the regular use of the Rabbit, the uninsured motorist provision does not apply.

Plaintiffs similarly dispute that the regular use exclusion applies in this case. Plaintiffs assert that there is no evidence that Green regularly used the Rabbit. On the contrary, plaintiffs assert that Green's use of the Rabbit was casual or incidental.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is only appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Callanan v. Runyun,* 75 F.3d 1293, 1296 (8th Cir.

---

1. Plaintiffs had garage policies on all the vehicles on the car lot but none of the policies provided underinsured motorist coverage. *See Farmers' Exhibit "D,"* at 68.

1996) (citations omitted). *See also* Fed. R.Civ. P. 56(c). All disputed facts are to be resolved and all inferences drawn in favor of the nonmoving party. *Id.*

The Eighth Circuit has stated that "summary judgment is an important method of promoting judicial economy by preventing the trial of cases in which no genuine issue of material fact remains." *Inland Oil & Transport Co. v. United States,* 600 F.2d 725, 728 (8th Cir.1979). Thus, the party opposing summary judgment may not rest on the pleadings, but must set forth facts that show there is a genuine issue for trial. *Id.*

## III. CHOICE OF LAW

■ Farmer's insurance policy does not contain a stipulation as to governing law. To determine which state's law applies, the court must examine "'the nature and quantity of each state's "contacts" with the transaction at issue.'" *Whirlpool Corp. v. Ritter,* 929 F.2d 1318, 1321 (8th Cir.1991) (*quoting Snow v. Admiral Ins. Co.,* 612 F.Supp. 206, 209 (W.D.Ark.1985)).

Under the facts of this case, the court believes that Arkansas has the most significant relationship with the insurance policy at issue. First, the plaintiffs were residents of Arkansas at the time the policy was issued and at the time of the accident. Second, Farmers' policy was issued to cover an automobile, the Malibu, that was owned by plaintiffs in Arkansas. Thus, Arkansas was the place "the parties understood was to be the principal location of the insured risk during the term of the policy." *Restatement (Second) Conflicts of Laws* § 193 (1971).

Finally, the situs of the accident was in Baxter County, Arkansas. Thus, the court holds that with respect to the policy at issue, the most significant relationship lies with Arkansas, and, thus, Arkansas law governs this case.

## IV. DISCUSSION

Farmers contends that under Arkansas law, a partnership is not an entity distinct from its members, and, thus, a partnership cannot own property as an entity. Therefore, Farmers asserts that plaintiffs are the owners of the Rabbit and, as a result, uninsured motorist coverage is excluded under the provision in the policy that states "coverage does not apply to **bodily injury** sustained by a person ... [w]hile **occupying** any vehicle owned by you or a **family member** for which insurance is not afforded under this policy...." *Farmers' Exhibit "A,"* at 7.

As indicated, this Court is obliged to look to Arkansas law to construe the terms of the insurance policy. If the terms of the policy are plain and unambiguous, they are to be applied as written without resort to construction techniques. On the other hand, if the provisions are ambiguous, the court is required to construe them against the interests of the insurer which drafted them. *See Allstate Ins. Co. v. U.S. Fidelity and Guar. Co.,* 663 F.Supp. 548, 553 (W.D.Ark.1987), *aff'd, U.S. Fidelity and Guar. Co. v. Cumpton,* 846 F.2d 1147 (8th Cir.1988).

In addition, the law is well-settled that a policy of insurance is nothing more than a contract between the insurance carrier and its insured, and is to be governed by the ordinary rules of interpretation of a contract. *See Perkins v. Clinton State Bank,* 593 F.2d 327, 334 (8th Cir.1979); *Tri–State Ins., Co. v. Sing,* 41 Ark.App. 142, 145, 850 S.W.2d 6, 8 (1993). The Court "must construe the insurance contract between the parties to give effect to the parties' intent." *Dupps v. Travelers Ins. Co.,* 80 F.3a 312, 314 (8th Cir.1996).

A common sense approach should be used and generally the words employed in the policy are to be construed in their plain, ordinary, and popular sense. *See Wommack v. United States Fire Ins. Co.,* 323 F.Supp. 981, 986 (W.D.Ark.1971). "[U]ndefined terms of an insurance policy ... must be construed in their plain, ordi-

nary and everyday sense and the parameters of the definition should reflect the legal characteristics most frequently attributed to the word." *Eagle Star Ins. Co., Ltd. v. Deal,* 474 F.2d 1216, 1220 (8th Cir.1973). "Such guidelines suggest that economic reality and substance, rather than legalistic form, should be determinative of the word's meaning." *Id.*

Furthermore:

[c]ontracts of insurance should receive a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties in the light of their general object and purpose. The terms of an insurance contract are not to be rewritten under the rule of strict construction against an insurer so as to bind the insurer to a risk which is plainly excluded and for which it was not paid.

*Sing,* 41 Ark.App. at 145, 850 S.W.2d at 8 (citations omitted).

"The initial determination of whether a contract is ambiguous rests with the court, . . . and when a contract is unambiguous, its construction is a question of law for the court." *Farm Bureau Mutual Ins. Co. v. Whitten,* 51 Ark.App. 124, 126–27, 911 S.W.2d 270, 271 (1995) (citation omitted). However, if the contract is found to be ambiguous, the meaning of the contract becomes a question of fact. *Id.*

"When the language of an insurance contract is unambiguous, and only one reasonable interpretation is possible, it is the duty of the court to give effect to the plain wording of the policy." *Id.* Rules of construction are not resorted to in the absence of an ambiguity. *Id.*

"In order to be ambiguous, a term in an insurance policy must be susceptible to more than one reasonable construction." *Id.* "If some ambiguity creeps in, the interpreting court must first seek resolution within the wording of the instrument before resort to extraneous information is used." *Hancock v. Tri–State Ins. Co.,* 43 Ark.App. 47, 51, 858 S.W.2d 152, 154

(1993). Any ambiguity must be construed in favor of the insured. *Dupps,* 80 F.3d at 314.

█  Farmers asserts that the language in the policy at issue is clear and unambiguous with respect to the exclusion at issue. Specifically, Farmers asserts that it is clear that under the restricted use endorsement, the only vehicle insured under the policy was the Malibu and that the plain language of the policy excludes coverage for injuries that are sustained by an insured who is occupying a vehicle owned by the insured for which insurance is not covered by the policy, *i.e.,* the Rabbit.

The court agrees that the provision of the policy is clear and unambiguous in that the policy excludes coverage for bodily injury sustained while occupying any other car owned by the insured for which coverage is not provided by the policy. However, the court does not believe that the exclusion applies to the present facts because for the exclusion to apply, the Rabbit must be owned by plaintiffs, and there is sufficient evidence that shows plaintiffs are not the owners of the Rabbit.

Farmers contends that in Arkansas, a partnership is not an entity distinct from its members, and, thus, a partnership cannot own property as an entity and it is the general partners who are actually the owners of the partnership property. Applying that theory, Farmers asserts that plaintiffs are the true owners of the property and, thus, the exclusion applies to this case. In other words, Farmers asserts that Arkansas takes the "aggregate" approach towards a partnership, which was the approach taken at common law. The aggregate approach takes the view that "a partnership is not an entity separate from its members and is nothing more than the aggregate of the individuals making it up." *Pate v. Martin,* 13 Ark.App. 182, 186, 681 S.W.2d 410, 413 (1985).

Therefore, at common law "[t]he partnership was not recognized as a legal separate entity separate and apart from the

individuals owning it and had no capacity to sue or be sued." *Id.* Even after Arkansas adopted the Uniform Partnership Act, or portions thereof, Arkansas courts have taken the position that Arkansas retained the common law rule that "except in specific instances a partnership is not an entity separate and apart from its members and remains no more than the aggregate of the individuals forming it." *Pate,* 13 Ark.App. at 186, 681 S.W.2d at 413. Specifically, the Arkansas Uniform Partnership Act "adopts the common law approach with modifications consistent with the 'entity' approach of the purposes of facilitating the acquisition and transfer of partnership property, marshalling of assets and protecting the business operation against immediate impact of personal involvement of the partners." *Pate,* 13 Ark.App. at 187, 681 S.W.2d at 413.

■ Therefore, a partnership is not a legal entity under Arkansas law for the purposes of obtaining a judgment against the partnership in the partnership's name. In other words, "the partnership itself cannot be sued as an entity. In Arkansas a partnership is sued by naming the general partners." *Farmers & Merchants Bank v. Hamilton Hotel Partners of Jacksonville Ltd. Partnership,* 702 F.Supp. 1417, 1427 (W.D.Ark.1988) (*citing Pate, supra*). But the court believes that a partnership is a legal entity under Arkansas law for the purpose of owning and conveying property.

Arkansas law defines a partnership as "an association of two (2) or more persons to carry on as co-owners a business for profit...." Ark.Code Ann. § 4–42–201(1) (Supp.1997). Further, "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property." Ark.Code Ann. § 4–42–203(1) (Repl.1996).[2] partnership may purchase and convey real property in the partnership's name. *See Ark.Code Ann.* § 4–42–203(3) (Repl.1996). Under Arkansas law, a partner is a "co-owner with his partners of specific partnership property" and each partner "has an equal right with his partners to possess specific partnership property for partnership purposes, but has no right to possess such property for any other purpose without consent of his partners." Ark.Code Ann. § 4–42–502(1), (2) (Repl.1996).

Based on Arkansas law, the court believes that Windy's Used Cars was the owner of the Rabbit for purposes of the insurance policy, and, as such, the exclusion that precludes uninsured motorist coverage—for injuries sustained while occupying a car owned by the insured for which coverage is not extended under the policy—does not apply to the accident at issue. The Rabbit was not owned by the insureds, Winfred and Mary Green, but was owned by Windy's Used Cars. The court believes that although Arkansas has not taken the entity approach with respect to some aspects of the partnership, Arkansas does treat the partnership as an entity for purposes of owning and transferring property. A general partner in a partnership only has the right to possess property for partnership purposes, and has no right to possess such property for any other purpose without the consent of the other partners. Thus, the general partners in a partnership do not have all of the rights and incidents that come with property ownership and, therefore, are not the true owners of partnership property. The court therefore concludes that summary judgment is not appropriate on the issue of whether uninsured motorist coverage is excluded under the provision that excludes coverage for injuries sustained while occupying a car owned by the insured for which coverage is not extended under the policy.

2. The court notes that the Arkansas General Assembly recently passed the Uniform Partnership Act 1996 (the "Act"), which takes effect January 1, 2000. Section 204 of the Act provides that "[p]roperty is partnership property if acquired in the name of ... the partnership."

■ Farmers has a second basis for excluding coverage under the policy. Farmers asserts that because Green had the Rabbit available to him for his regular use, the policy expressly excludes coverage for any injuries that occur while Green was occupying the Rabbit.

As stated, the endorsement attached to the end of the policy states: "[u]ninsured motorist coverage ... does not apply to **damages** arising out of the ownership, maintenance, or use of any vehicle other than **your insured car** ..., which is owned by or furnished or available for the regular use by you or a **family member.**" *Farmers' Exhibit "A."* Plaintiffs assert that there is no evidence that Green used the car for more than casual or incidental use, and, thus the exclusion does not apply.

Plaintiffs cite to *General Agents Insurance Company of America v. People's Bank & Trust Company,* 42 Ark.App. 95, 854 S.W.2d 368 (1993), in which the court decided a case with similar facts as the ones currently before this court. In *General Agents,* the court of appeals affirmed the trial court's holding that an automobile that was involved in an accident was not one "furnished for the regular use" of the driver. *Id.,* 42 Ark.App., at 96, 854 S.W.2d at 369. Specifically, in *General Agents,* Bob Dimango was the manager of a used car lot and was allowed by the owner of the lot to select and drive whatever vehicle he wanted from the lot. It was undisputed that Dimango drove different vehicles from time to time. One evening, Dimango selected a car from the lot to drive, went to a bar with a friend, and while returning home had a wreck and killed a man. In denying coverage, General Agents Insurance Company of America ("General Agents") relied on a provision of the policy excluding " 'those automobiles ... furnished for the regular use of ... employees[.]' " *Id.* The court of appeals held that the trial court was "entirely correct in holding that the automobile involved in the accident was not one 'furnished for the regular use of' Mr. Dimango." *Id.* Accord-

ing to the Arkansas Supreme Court, " 'regular use' means 'principal use as distinguished from a casual or incidental use.' " *Id.* (quoting *Tillotson v. Farmers Ins. Co.,* 276 Ark. 450, 637 S.W.2d 541 (1982)). The court reasoned that:

> Mr. Dimango regularly used vehicles off the lot for his nonbusiness purposes. He did not, however, as even the appellant concedes, use the vehicle involved in the accident on a regular basis. Nor was it furnished to him for his regular use. Given the undisputed facts in this case, we agree with the trial court's conclusion.

*Id.,* 42 Ark.App. at 96, 854 S.W.2d at 369–70.

In this case, Green testified that he always drove the vehicles that were on his car lot. Green explained:

> I get to drive them free because I buy them and then I drive [them] and then I sell them. Every car dealer does that. They don't have their personal cars. Their wife may have a personal car or their kids, but ... the man that owns the dealership never does. They always drive a car off the lot. That's a normal thing. Because you've got insurance, you've got license plates for it that you pay big dollars for, so you drive them. Every dealer that I've seen does. And I've been in a lot of years, I mean.

*Farmers' Exhibit "D,"* at 67–68.

■ Farmers contends that to hold it liable for coverage under the policy would be requiring Farmers to provide coverage for a vehicle that neither party intended to insure. Farmers asserts that it never intended to insure any and all vehicles owned by plaintiffs through their partnership. The court agrees that insurance coverage should not be extended to cover a risk for which a premium was not collected by the insurer. However, when the policy contains a clear and unambiguous provision, it must be interpreted in accordance with its plain meaning. The Arkansas courts have held that "regular use" means

"'principal use as distinguished from a casual or incidental use.'" *General Agents,* 42 Ark.App. at 96, 854 S.W.2d 368. Farmers has simply failed to prove that no genuine issue of material fact exists with respect to whether the Rabbit was furnished or available for Green's regular use, as that term has been defined by the Arkansas Supreme Court. Therefore, Farmers' motion for summary judgment will be denied.

## V. CONCLUSION

For the reasons stated, Farmers's motion for summary judgment will be denied. A separate motion order shall be entered concurrently herewith.