Nora M. HARRISON, Plaintiff,

v.

BORNN, BORNN & HANDY, f/d/b/a Bornn, Bornn, Handy & Rashid, a partnership; Ethel Carr Hunter Mitchell, Esq.; Edith L. Bornn, Esq.; David A. Bornn, Esq.; Veronica J. Handy, Esq.; and Does 1 through 30, inclusive, Defendants.

No. CIV. A. 98–01(STT).

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

May 15, 2001.

510

Karin A. Bentz, St. Thomas, USVI, for Plaintiff.

Richard Hunter, Hunter Cole & Bennett, Christiansted, St. Croix, USVI, for Defendants Bornn, Bornn & Handy, Edith Bornn, David Bornn, and Veronica Handy.

J. Daryl Dodson, Moore & Dodson, St. Thomas, USVI, for Defendant Ethel Mitchell.

## OPINION ON MOTIONS TO DISMISS AND FOR ENTRY OF DEFAULT

BROTMAN, District Judge.

### I. *INTRODUCTION*

This legal malpractice case arises from Defendant Ethel Mitchell's alleged negligence in handling a personal injury action brought by Plaintiff in 1993 in the District Court of the Virgin Islands. Presently before the Court are (1) Mitchell's motion to dismiss the complaint for failure to effect timely service of process, and (2) Plaintiff's motion for entry of default against the individual partners of Defendant Bornn, Bornn & Handy, Mitchell's former law firm, for failure to answer the complaint.

### II. *FACTUAL AND PROCEDURAL BACKGROUND*

#### A. The 1993 Lawsuit

In 1993, Nora Harrison retained Bornn, Bornn & Handy to represent her in a personal injury action in the District Court against

Frenchman's Reef Beach Associates ("Frenchman's Reef"), a limited partnership. Mitchell, a lawyer affiliated with the Bornn, Bornn & Handy firm, had primary responsibility for Harrison's case. In January 1996, Frenchman's Reef moved to dismiss the complaint on the basis that there was not complete diversity between the parties. The motion to dismiss disclosed for the first time, Mitchell contends, that some Frenchman's Reef partners were, like Plaintiff, citizens of New York. By the time of the motion to dismiss, the limitations period for refiling the action in the Territorial Court had run. By order of April 12, 1996, the District Court dismissed the complaint for lack of subject matter jurisdiction. The Third Circuit affirmed that order on December 24, 1996. Frenchman's Reef thereafter sought and, on March 12, 1998, was awarded costs and sanctions against both Mitchell and Harrison totaling $44,488.

## B. Malpractice Action

Displeased with Mitchell's representation, Harrison hired another attorney, Valerie Collanton, and on January 5, 1998, filed a complaint in District Court alleging legal malpractice. The lawsuit named Mitchell, the Bornn, Bornn & Handy law firm, and its individual partners as defendant parties. On February 17, 1998, Harrison filed an amended complaint against the same defendants. She contends that Defendants not only were negligent in failing to pursue her case in a proper forum, but also that they concealed information from her and otherwise failed to inform her about developments in the case.

Given the January 5 filing date of the original complaint, Plaintiff had until May 5, 1998, to perfect service of process on Defendants. *See* Fed.R.Civ.P. 4(m) (establishing 120 day time limit for effecting service).

### 1. *Bornn, Bornn & Handy*

The Bornn, Bornn & Handy law firm, as well as its individual partners—David Bornn, Edith Bornn, and Veronica Handy—were timely served with the amended complaint in February. Dodson Aff. ¶ 5. The partnership answered the complaint on March 18, 1998, but the individual partners did not file an-

swers. The partners have, however, responded to interrogatories and otherwise participated in the case.

### 2. *Ethel Mitchell*

For reasons that are still unclear, Collanton did not initiate service of process on Mitchell in February, when the other defendants were served. Dodson Aff. ¶ 5. At the time the complaint was filed, Mitchell was no longer practicing law in the Virgin Islands and had moved to Texas. Plaintiff had notice of this fact as early as May 1997, when Mitchell wrote Harrison a letter explaining her actions and listing a post office box in Arlington, Texas, as her return address. Mem. Opp. Mot. Dismiss Ex. D. Mitchell also contends that she left the address of her new residence—2932 Binkley Avenue No. 4, Dallas, Texas—with the Territorial and District Courts. Mitchell Aff. ¶¶ 5, 6. Additionally, Collanton was apprised of Mitchell's whereabout in April 1998 when she was copied on a letter, relating to the 1993 case, that contained Mitchell's Binkley Avenue address in Dallas as well as the address of her law office in Arlington. Mem. Supp. Mot. Dismiss Ex. A.

On April 16, 1998, Collanton requested that a summons for Mitchell be issued and engaged the services of a process server in Texas. Bentz Aff. Ex. E2. However, the server's report reflects that he did not make his first service attempt until the deadline day, May 5, when he found no one at home at the Dallas address. The server did not try again until May 19, when he again found no one home. Finally, on May 20, the server spoke to someone at the Dallas address who said Mitchell no longer lived there. Bentz Aff. Ex. E4. By this time, Mitchell had apparently moved to 5239 Villa Brook Lane in Arlington. Mitchell Aff. ¶ 7. Collanton received notice of this address in August 1998, when she was served with copies of Mitchell's responses to interrogatories in the 1993 litigation. Mem. Supp. Mot. Dismiss Ex. B. By August, however, Collanton was not pursuing the case, having stopped working shortly after her husband passed away in May. Mem. Opp. Mot. Dismiss Exs. F, G.

512

In October 1998, Harrison retained new counsel, Karin Bentz. Due to confusion over what had previously transpired in the case, Magistrate Judge Barnard on December 3, 1998, entered an order requiring Bentz to determine whether Mitchell had been served, and if not, whether and how to effect service. Mem. Opp. Mot. Dismiss Ex. H. On February 22, 1999, more than 400 days after the complaint was filed, Bentz moved for an extension of time to effect service.[1] On March 24, 1999, Judge Barnard extended the deadline for service to June 30, 1999.

In the meantime, Mitchell had made two more moves: first to New York City, where she lived between September 1998 and March 1999, and then to Accra, Ghana, where she attended the Ghana School of Law. Mitchell Aff. ¶¶ 8, 9. In May 1999, Bentz learned of the New York move and made an unsuccessful attempt to serve process at the address there. In light of the continued failures to find Mitchell, Judge Barnard on June 18, 1999, authorized substituted service on Mitchell via publication in a Virgin Islands newspaper. Mitchell received word of the publication in July 1999, Mitchell Aff. ¶ 13, and filed the instant motion to dismiss on September 10, 1999.

### III. *MOTION TO DISMISS*

Mitchell moves to dismiss the claims against her on the ground that Plaintiff failed to serve her with the complaint within the 120 days allotted under Federal Rule of Civil Procedure 4(m).

■ As amended in 1993, Rule 4(m) provides:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, *shall* dismiss the action without prejudice as to that defendant *or* direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (1993) (emphasis added). Thus, the district court must first determine whether good cause for the failure to timely effect service exists. "If good cause is present, the district court must extend time for service and the inquiry is ended." *Petrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298, 1305 (3d Cir.1995). If good cause does not exist, the court retains discretion to either dismiss the case or extend time for service. *Id.* (finding that use of the disjunctive "or" in the first clause of Rule 4(m) allows the court to choose between the two options).[2]

■ This case is unusual because Judge Barnard has already engaged in the Rule 4(m) analysis. In his order of March 24, 1999, after intimating that good cause for failure to serve likely did not exist, Barnard nonetheless exercised his discretion to extend the time for service. Barnard explained:

Upon review of the instant pleadings and the file, the Court will not dismiss the case against defendant Mitchell as this matter is still [sic] the early stages. Moreover the Court will not penalize plaintiff for prior counsel's oversight in failing to request an extension of time prior to the expiration of the 120 days in May of 1998. Lastly the Court would prefer to dispose of this case on the merits.

---

1. Mitchell contends that in the motion for an extension, Bentz misrepresented the timing of her involvement in the case. Although Bentz filed an appearance in the case in October 1998, she allegedly averred in the motion that she had not substituted for Collanton until January 22, 1999.

2. Prior to the 1993 amendment, Rule 4(m) was designated as Rule 4(j) and read as follows:
If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action *shall* be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.
Fed.R.Civ.P. 4(j) (1991) (emphasis added). Under the old rule, then, the district court lacked discretion to extend the time for service if the plaintiff could not show good cause. *Petrucelli*, 46 F.3d at 1304.

Order of March 24, 1999 (Barnard, J.). Because Judge Barnard has already ruled on the Rule 4(m) issue, the Court construes Mitchell's motion as an appeal of the order extending the deadline for service.

■ Under Federal Rule of Civil Procedure 72(a), a party must file any objections to a magistrate's order within ten days of being served with a copy of the order. Fed. R.Civ.P. 72(a). Thereafter, "a party may not . . . assign as error a defect in the magistrate judge's order to which objection was not timely made." *Id.* The requirement of a timely objection is of dubious applicability in this case, however, since Mitchell could neither be served with the magistrate's orders nor object to them until she found out about the lawsuit. Moreover, the record does not reflect that Mitchell was ever served with the March 24, 1999, order once she received notice of the lawsuit in July 1999, although she certainly learned of its existence at some point. In light of these circumstances, the Court will not deny relief for want of a timely objection.

■ However, the Court will deny Plaintiff's motion because it finds no error in Judge Barnard's order. A district court, in reviewing a magistrate judge's order on a non-dispositive motion, may modify or vacate the order only if the ruling was "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *see also Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 & n. 5 (3d Cir.1986). A finding is clearly erroneous, " 'although there is evidence to support it, [if] the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J.1990) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In this case, Judge Barnard retained discretion under Rule 4(m) to extend the time for service even though Collanton, Harrison's first malpractice attorney, had failed to request an extension and may have been dilatory in finding Mitchell. Judge

Barnard expressed valid reasons for exercising that discretion: the law's preference for disposing of a case on its merits, *see, e.g., Gross v. Stereo Component Sys., Inc.,* 700 F.2d 120, 122 (3d Cir.1983); and the fact that the case was still in the early stages, such that there would be no prejudice to the defendants.

Even with the benefit of a full record, informed by Mitchell's account of her whereabouts, the Court finds the extension appropriate. It is true that, with a little more effort on Collanton's part, Mitchell might easily have been found in Texas. Additionally, it is unclear how much effort Bentz put into finding Mitchell between October 1998 and May 1999. Nonetheless, Mitchell's frequent moves belie her contention that she was easy to find. Moreover, Judge Barnard's reasons for extending time for service remain valid. It is preferable to decide the case on its merits, and Plaintiff should not be penalized for Collanton's inaction. Lastly, there is no apparent prejudice to Mitchell in extending time for service. Mitchell argues that, with the passage of time since she represented Harrison, her memory of the 1993 case has faded and her files have been scattered. As an attorney, however, Mitchell has the responsibility of maintaining her notes and files in suitable order. Accordingly, the Court will deny Mitchell's motion to dismiss the complaint.

## IV. *MOTION FOR ENTRY OF DEFAULT*

Plaintiff moves for entry of default against the individual partners of the Bornn, Bornn & Handy law firm on the basis that they have never answered the complaint.

■ Federal Rule of Civil Procedure 55(a) allows for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules. . . ." Fed. R.Civ.P. 55(a).[3] "Plead" means filing an answer; "otherwise defend" refers to a motion challenging such matters as service, venue,

---

**3.** Although Rule 55 contemplates entry of default by the clerk, a court may also impose default as a sanction. *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 917 n. 11 (3d Cir.1992); *see also Brock v. Unique Racquetball & Health Clubs,* 786 F.2d 61 (2d Cir.1986).

or the sufficiency of a pleading. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2682, at 16–17 (3d ed.1998).[4] Because it is undisputed that the Bornn, Bornn & Handy partners never filed such a pleading or motion, the question presented in this case is whether the partnership's answer suffices—for the purpose of avoiding default—for the individual partners as well. At its heart, this question really concerns whether a partnership has a separate legal existence—an issue the parties vigorously dispute.

Plaintiff directs the Court's attention to the Virgin Islands Uniform Partnership Act ("UPA"), which, as amended in 1998, provides that "[a] partnership is an entity distinct from its partners." 26 V.I.C. § 21 (Supp.2000). From this "entity theory" of partnership, *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1192 (3d Cir.1996), flow two principles concerning judgments. First, a judgment against a partnership is not by itself a judgment against the individual partners, and a partner's assets may not be used to satisfy a judgment against the partnership unless there is also a judgment against the partner. 26 V.I.C. § 47(c) (Supp.2000). Second—and a corollary to the first—a judgment against a partner generally may not be executed unless there exists an unsatisfied judgment, based on the same claim, against the partnership. 26 V.I.C. § 47(d) (Supp.2000).[5] Under the UPA, then, a plaintiff must sue the partners as well as the partnership in order to obtain a judgment against individual partners' assets.

Provided the new UPA provisions are applicable to this action, their logical implication is that the Bornn, Bornn & Handy partners were required to individually "plead or otherwise defend" to avoid default. Since a cause of action may not be maintained against the partners simply by suing the partnership, it follows that the partners may not defend themselves simply by answering as a partnership. By extension, partners who fail to individually answer or otherwise challenge the complaint may be subject to entry of default.

■ The UPA language supporting Plaintiff's position, however, was not added to the statute until after Plaintiff filed her complaint on January 5, 1998. The amendment was enacted on February 12, 1998, and by its express terms took effect May 1, 1998. Act of Feb. 12, 1998, No. 6205, § 1, 1998 V.I. Sess. Laws 103. Because the amended UPA lacks any instruction that it be employed retroactively, its provisions cannot be applied in this case.[6] The Court must therefore look to the previous statute for guidance. The pre-amendment UPA retained the common law "aggregate approach" to partnership, under which a partnership is not a separate entity and is nothing more than the aggregate of the individual partners. *See V.I. Terr. Bd. of Realtors v. Wheatley*, 6 V.I. 185, 193 (D.V.I.1967); *see also Weller v. Brownell*, 240 F.Supp. 201 (M.D.Pa.1965) (discussing the aggregate approach generally).

■ Thus, for purposes of this case, Defendants' view is accurate: a partnership has

---

4. Thus, the fact that the individual partners have responded to interrogatories does not preclude entry of default against them.

5. Under the UPA, any of four circumstances constitutes an exception to this rule: (1) the partnership is a debtor in bankruptcy; (2) the partner has agreed that the creditor need not exhaust partnership assets; (3) a court grants permission for the creditor to levy execution against the partner's assets, based on a finding that the partnership assets are insufficient, that exhaustion of the partnership assets would be excessively burdensome, or that the grant of permission is an appropriate exercise of the court's equitable powers; or (4) the partner is liable by law or contract independent of the partnership. 26 V.I.C. § 47(d) (Supp.2000).

6. The general rule, expressed in numerous Supreme Court opinions, is that laws are not to be applied retroactively absent specific direction to the contrary from the legislature. *See, e.g., Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 843–44, 110 S.Ct. 1570, 1580–81, 108 L.Ed.2d 842 (1990); *Miller v. United States*, 294 U.S. 435, 439, 55 S.Ct. 440, 442, 79 L.Ed. 977 (1935); *Union Pacific R.R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913). The only direction given in the amended UPA—its effective date of May 1, 1998, 90 days after the statute's enactment—bolsters the presumption that the statute should have only prospective effect.

no existence apart from its partners. The conclusion they draw, however—that the partnership's answer is sufficient—is incorrect. The implication of the aggregate approach for suits against partnerships, though not addressed in the Virgin Islands case law, is clear: partnerships, lacking legal status, may not be sued; claims must instead be brought against the partners. Such is the rule in other jurisdictions where the common law view of partnership has persisted. *See, e.g., Green v. Farmers Ins. Co.*, 57 F.Supp.2d 729 (W.D.Ark.1999); *Gosselin v. O'Dea*, 40 F.Supp.2d 45, 47 (D.Mass.1999); *Affie, Inc. v. Nurel Enters., Inc.*, 607 F.Supp. 220, 221 (D.D.C.1984); *Hartford Fin. Sys., Inc. v. Fla. Software Servs., Inc.*, 550 F.Supp. 1079, 1090 (D.Me.1982); *Tiffany Indus., Inc. v. Harbor Ins. Co.*, 536 F.Supp. 432, 434 (W.D.Mo.1982).[7] Because the individual partners are the properly named defendants in this lawsuit, it follows that they—not the partnership—should have filed answers. In not doing so, they exposed themselves to entry of default.

■ Nonetheless, the Court declines to enter default at this stage of the proceedings. "[W]hen one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants...." Wright, Miller & Kane, 10A Federal Practice and Procedure § 2690 (3d ed.1998); *see also Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 153–54 (3d Cir.1986). This policy avoids the possible absurdity of the Court sustaining a charge against a defaulting party but later dismissing that charge as unfounded. *Farzetta,* 797 F.2d at 153 (citing *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 554, 21 L.Ed. 60 (1862)). The Court will therefore deny Plaintiff's request for entry of default, and direct Defen-

dants David Bornn, Edith Bornn, and Veronica Handy to file individual answers.[8]

## V. CONCLUSION

For the reasons stated herein, the Court will deny Defendant Ethel Mitchell's motion to dismiss and Plaintiff's motion for entry of default. An appropriate order follows.

**THIS MATTER** having come before the Court on (1) Defendant Ethel Mitchell's motion to dismiss the complaint for insufficiency of service of process, and (2) Plaintiff's motion for entry of default against Defendants Edith Bornn, David Bornn, and Veronica Handy for failure to answer the complaint;

The Court having reviewed the record and the submissions of the parties; and

For the reasons stated in the Court's opinion of this date;

**IT IS** this *15th* day of May, 2001, **HEREBY**

**ORDERED** that Defendant Mitchell's motion is **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendants Edith Bornn, David Bornn, and Veronica Handy are to file answers to the amended complaint on or before *May 29, 2001;*

No costs.

---

7. Pursuant to Federal Rule of Civil Procedure 17(b), a partnership's capacity to sue or be sued in federal court is determined by the law of the state in which the district court is located. Fed. R.Civ.P. 17(b). The sole exception to this rule is that a partnership may always sue or be sued in federal court for the purpose of enforcing a substantive right existing under the Constitution or the laws of the United States. *Id.*

8. The defendant partners, alleging that Plaintiff's motion for default is devoid of merit and was filed in bad faith, have requested sanctions in the form of "legal fees incurred in responding to this specious motion." Defs.' Opp. Mot. Default at 2. Because the Court finds—albeit via different reasoning—that the partners should have filed answers, Plaintiff's motion was not lacking in merit. The request for fees is therefore denied.