**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-4579
_____

CHARLES ILES

v.

GOVERNOR JOHN P. DE JONGH, JR., in his official and
individual capacity, and THE GOVERNMENT OF THE
UNITED STATES VIRGIN ISLANDS

(D.C. No. 1-07-cv-00094)

CLAUDE S.M. GERARD

v.

GOVERNOR JOHN P. DE JONGH, JR., in his official and
individual capacity, and THE GOVERNMENT OF THE
UNITED STATES VIRGIN ISLANDS

(D.C. Nos. 1-07-cv-00019 & 1-07-cv-00053)

John P. de Jongh, Jr., in his official capacity,
and the Government of the Virgin Islands,
                                        Appellants

1

_____

On Appeal from the District Court
of the Virgin Islands
District Judge: Honorable Raymond L. Finch
_____

Argued December 14, 2010

Before: McKEE, Chief Judge, FUENTES, SMITH, Circuit
Judges

(Opinion Filed: April 19, 2011)

Pamela R. Tepper, Esq. **[ARGUED]**
Vincent F. Frazer, Esq.
Elliott M. Davis, Esq.
Richard S. Davis, Esq.
Office of the Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade,
GERS Building, 2nd Floor
Charlotte Amalie,
St. Thomas, USVI 00802

Counsel for Appellants

Jeffrey B.C. Moorhead, Esq. **[ARGUED]**
CRT Brow Building
No. 1132 King Street, Suite #3
Christiansted,
St. Croix, USVI 00820-5076

Counsel for Appellees

## OPINION OF THE COURT

FUENTES, Circuit Judge:

Shortly after commencing his first term in office, U.S. Virgin Islands Governor John P. de Jongh, Jr., fired Claude S.M. Gerard and Charles Iles, two public employees in the Department of Planning and Natural Resources. Both employees sued the Governor and the Government of the Virgin Islands, claiming that their terminations deprived them of their property interests in public employment without due process of law. Following an evidentiary hearing, the District Court agreed and issued a preliminary injunction directing that Gerard and Iles be reinstated and that they be compensated for lost wages. Governor de Jongh and the Government of the Virgin Islands appeal the order granting the preliminary injunction. We will reverse.

## I.

In June 2004, then Governor Charles W. Turnbull signed two Notices of Personnel Action ("NOPA") relevant to this case. In one notice, he transferred Appellee Charles Iles from his previous government position to that of Permits Coordinator for the Division of Coastal Zone Management, within the Department of Planning and Natural Resources. The NOPA listed Iles' new position as "exempt." Thereafter, Iles signed a letter addressed to the Acting Director, Division

3

of Personnel, which stated:

> In accordance with Act 5336, Section 6(c) and Section 8(a), I am electing to be placed in the EXEMPT SERVICE of the Government of the Virgin Islands by accepting the position of <u>Permits Coordinator, Division of Coastal Zone Management</u> at <u>$43,000.00</u> per annum, in the DEPARTMENT OF PLANNING AND NATURAL RESOURCES.
>
> This request is voluntary as certified by witness.

In the other notice, Governor Turnbull transferred Appellee Claude S.M. Gerard from his previous position to that of Assistant Director for the Division of Coastal Zone Management, within the Department of Planning and Natural Resources. The NOPA also stated that Gerard's position was "exempt." Gerard then signed a letter to the Acting Director, Division of Personnel that was identical to the one signed by Iles, except for its statement that Gerard's new position was "<u>Assistant Director, Division of Coastal Zone Management</u> at <u>$50,000.00</u> per annum."

In January 2007, de Jongh succeeded Turnbull as Governor of the Virgin Islands. Shortly after taking office, and without prior notice or a hearing, Governor de Jongh terminated both Gerard and Iles from further government service. In a letter to Iles, he said:

> You are hereby advised that your services as Permits Coordinator of the Coastal Zone Management in the Department of Planning and

4

Natural Resources will no longer be necessary. Therefore, your employment with the Government of the Virgin Islands is terminated effective February 9, 2007.

On behalf of the people of the Virgin Islands, I would like to thank you for your service. I wish you the best in all your future endeavors.

Governor de Jongh also terminated Gerard, writing him the same letter he wrote to Iles, except for substituting the position of "Assistant Director" for "Permits Coordinator."

Gerard and Iles filed complaints in the District Court for the Virgin Islands, alleging, among other things, that Governor de Jongh and the Government of the Virgin Islands had deprived them of their property interests in public employment without due process of law. Thereafter, Gerard and Iles moved for a preliminary injunction seeking immediate reinstatement and back pay. After an evidentiary hearing, the District Court granted Gerard's and Iles' motions for preliminary injunctions and ordered that Governor de Jongh reinstate Gerard and Iles to their prior positions. The District Court also ordered that Gerard and Iles be compensated for the wages they would have otherwise received from the date of their termination to the date of their reinstatement. Governor de Jongh and the Government filed appeals from the preliminary injunction.[1]

---

[1] We have jurisdiction over this interlocutory appeal of a grant of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).

## II.

### A.

To determine whether to grant a preliminary injunction, "a district court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (quoting United States v. Bell, 414 F.3d 474, 478 n.4 (3d Cir. 2005)) (internal quotation marks omitted).

Although this case comes to us from the appeal of the grant of a preliminary injunction, Governor de Jongh only challenges the District Court's ruling as to the first element of the preliminary injunction standard—the likelihood of success on the merits of Gerard and Iles' procedural due process claim.

We have explained that to establish a procedural due process claim, a plaintiff must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." Biliski v. Red Clay Consol. School Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d

Cir. 2006)).[2] "The question of whether an employee has a property right in continued employment is a question of state [or territorial] law." McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). However, before determining whether Gerard and Iles have a property right in their employment under Virgin Islands law, it is helpful to examine the various statutory provisions governing public employment in the Virgin Islands. Employee classifications contained in the statutory provisions are important because they determine which employees are entitled to due process protection before termination.

**B.**

Beginning with the two broadest categories under Virgin Islands law, public employees are divided into (1) "career service" and (2) "exempt service" employees. See Martinez-Sanes v. Turnbull, 318 F.3d 483, 487 (3d Cir. 2003) ("Thus, employees of the Virgin Islands are divided into two categories, the '[Career] Service' entitled to Civil Service protection, and the 'Exempt Service' not so entitled."). The division between these two categories is set forth in 3 V.I.C. § 451a(c), which provides that "[a]ll positions in the Executive Branch of the United States Virgin Islands Government not exempted under subsection (b) of this section shall be in the

---

[2] In order to comport with due process, in cases where it is possible to conduct a pre-termination hearing, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Biliski*, 574 F.3d at 220.

career service." In other words, an employee is in the career service unless the employee holds an exempt position described in 3 V.I.C. § 451a(b)(1)-(8). Because the parties agree that subsections (1) through (7) of § 451a(b) are not applicable here, we focus our analysis on subsection (8). Under subsection (8), an employee is exempt if he or she is:

> an officer or employee in a position of a policy-determining nature <u>when the position is so designated by the Governor and submitted to the Legislature</u>; and an employee who is a special assistant, or who is on special assignment to, or whose position requires a confidential relationship with a policy-making official when the position is so designated by the Governor and submitted to the Legislature.

(emphasis added). Thus, a position is exempt and not in the career service category when the Governor designates it as a position of a "policy-determining nature" and it is submitted to the Legislature. The exempt designation is important because employees in that category can be terminated without cause. Employees who are not "exempt" are then considered "career service" employees.

The career service category is further divided by § 451 into two subcategories: employees who are "regular" and those who are "not regular," respectively. Thus, the categories of career service employees and regular employees are not interchangeable. <u>Richardson v. Felix</u>, 856 F.2d 505, 509 (3d Cir. 1988). As we explained in <u>Richardson</u>, a "regular" employee is one "who has been appointed to a position in the [career] service in accordance with this chapter

8

[relating to the Personnel Merit System] after completing his working test period." Richardson, 856 F.2d at 509 (citing 3 V.I.C. § 451 (1967)) (alterations in Richardson). Therefore, a "career service" employee is also a "regular" employee only if he has been appointed to his position in accordance with the Personnel Merit System and has completed his probationary period.

Further, in interpreting Virgin Islands law, we have previously held that under the employee termination procedures of § 530, employees who are "regular employees" may be terminated only for cause, thus granting them "a property interest in continued employment." Id.; see also Martinez-Sanes, 318 F.3d at 489 (stating, in interpreting Virgin Islands law, that "[o]nly 'regular' employees had Civil Service Protection" and vacating injunction based on procedural due process claim, because plaintiff had not completed his probationary period as required by the definition of "regular" employee.) (emphasis added); Richardson, 856 F.2d at 511 n.8 ("As noted earlier in our discussion, section 530, the provision that makes regular employees terminable only for cause, also sets forth procedures for the termination of such employees.") (emphasis added). Accordingly, not all "career service" employees have due process protection, but rather, only those who also meet the definition of "regular" employees.

## C.

In the case before us, the District Court explained that under § 451a(b)(8), regardless of whether Gerard and Iles were in positions designated as policy-determining in nature, the Governor had not submitted those designated positions to

9

the Legislature, as required for any "exempt" employee under § 451a(b)(8).

Governor de Jongh argues that the District Court incorrectly concluded that the Governor must submit these designations to the Legislature before employees in those positions can become "exempt." It is true that in Martinez-Sanes, when determining whether an employee was in the "exempt service" under § 451a(b)(8), we focused exclusively on the fact-intensive question of whether a given employee was in a position of a policy-determining nature. 318 F.3d at 488-90. We did not analyze whether the employee's position had been designated as "exempt" by the Governor and submitted to the Legislature. However, in 1999 when the suits in Martinez-Sanes were filed, § 451a(b)(8) did not include the current language requiring that a "position of a policy-determining nature" be "so designated by the Governor and submitted to the Legislature" before it could become an "exempt" position. In Martinez-Sanes, this Court relied on the pre-2000 version of § 451a(b)(8), which stated that "exempt" employees include:

> [a]n officer or employee in a position of a policy-determining nature; employee who is a special assistant, or who is on special assignment to, or whose position requires a confidential relationship with a policy-making official when the position is so designated by the Governor and submitted to the Legislature.

318 F.3d at 487 (quoting the pre-2000 version of § 451a(b)(8)). Notably, the first clause regarding "position[s] of a policy-determining nature" is separated from the rest of

10

the subsection by a semicolon, thus indicating that the later modifier "when the position is so designated by the Governor and submitted to the Legislature" does not modify this first clause, as it does the remaining clauses in the subsection. The current language, however, makes "exempt":

> an officer or employee in a position of a policy-determining nature when <u>the position is so designated by the Governor and submitted to the Legislature</u>; and an employee who is a special assistant, or who is on special assignment to, or whose position requires a confidential relationship with a policy-making official when the position is so designated by the Governor and submitted to the Legislature.

(emphasis added). This change in the language of § 451a(b)(8), which extends the designation and submission requirements to those employees in positions of a policy-determining nature, was created by a 2000 amendment to § 451a. In light of this intervening change in the language of § 451a, <u>Martinez-Sanes</u> can no longer be relied on to support the position that Governor de Jongh advocates.

Governor de Jongh argues that even if § 451a(b)(8) does require that all positions of a policy-determining nature be designated as such and "submitted to the Legislature," testimony at the District Court hearing established that both Gerard's and Iles' designated positions were submitted to the Legislature. However, we have reviewed the pages in the Joint Appendix where this testimony allegedly occurred and find no evidence to support the claims made by Governor de Jongh. (De Jongh Brief, at 14-15, citing JA, at 157-204). On

11

page 15, in footnote 2 of his brief, de Jongh also cites to Gerard's "trial" transcript to support his claim of evidence that the designations were submitted to the Legislature. Although this transcript was not included in the Joint Appendix, we have obtained a copy and have considered it. After reviewing the testimony of Milton E. Potter, Assistant Director for the Division of Personnel for the Virgin Islands Government, we agree with the District Court that de Jongh has not shown that Gerard and Iles were "designated [as being in a position of a policy-determining nature] by the Governor and submitted to the Legislature." 3 V.I.C. § 451a(b)(8).

The Governor further argues that the District Court broke off the evidentiary hearing despite his insistence that he be permitted to present additional evidence. Again, however, nowhere in the record is there any indication that Governor de Jongh's counsel wished to continue the hearing or proffer additional evidence. Indeed, just before the hearing ended, Governor de Jongh's counsel told the District Court: "Your Honor, [the] Government rests." (JA, at 202).

Accordingly, after determining that there was no evidence to suggest that Gerard or Iles' designated positions had been submitted to the Legislature, the District Court did not err when it found that neither Gerard nor Iles occupied an exempt position. Thus, because by definition "[a]ll positions in the Executive Branch of the United States Virgin Islands Government not exempted . . . shall be in the career service[,]" 3 V.I.C. § 451a(c), the District Court correctly found that Gerard and Iles were career service employees.

**D.**

12

As previously noted, merely because a Virgin Islands public employee is part of the "career service" does not necessarily mean that he is also a "regular" employee with a property interest entitled to due process protection. In this regard, the District Court erred by conflating "career service" employees with "regular" employees. To be a "regular" employee and thus gain a property interest in employment, an employee must have been "appointed to a position in the [career] service in accordance with this chapter after completing his working test period." 3 V.I.C.§ 451. "[T]his chapter" refers to Title 3, Chapter 25 of the Virgin Islands Code, which in addition to §§ 451 and 451a, also includes Sections 521 through 535. These sections set forth the standards and requirements for "tests, appointments, promotions, and dismissals" of "regular" public employees. Under Section 521, to have been "appointed to a position in the [career] service in accordance with this chapter" requires that an employee have been appointed "on the basis of merit and fitness, to be ascertained by competitive examinations." 3 V.I.C. § 521.

Here, the District Court found that neither Gerard nor Iles had shown that they were appointed "on the basis of merit and fitness, . . . [as] ascertained by competitive examination." (JA, at 11) (quoting 3 V.I.C. § 521). Nor is there anything in the record to suggest that Gerard or Iles was ever appointed in accordance with Chapter 25 as is required to become a "regular" employee. Thus, although Gerard and Iles were "career service" employees, they were not "regular" employees under the plain language of 3 V.I.C.§ 451.[3]

---

[3] Although, when interpreting identical statutory language in

Gerard and Iles also contend, however, that a 2010 amendment to § 530 applies in this case, and that the amendment removes the requirement that a "regular" employee have been appointed in accordance with the requirements of Chapter 25 of the Virgin Islands Code, including the competitive merit provisions. Whether the amended definition of a "regular" employee applies to Gerard and Iles depends on an analysis under Landgraf v. USI Film Prods., 511 U.S. 244 (1994), which sets forth the following two-part test for determining whether a statute enacted after the events of a suit nevertheless applies to that suit:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute

Richardson, we found that the plaintiff was a regular employee merely by virtue of having been employed for more than a year, the majority opinion in that case simply did not address the additional requirement of § 451 that the employee have been appointed in accordance with the requirements of the Personnel Merit System.

> would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Id. at 280.

At the first step, we determine that there is nothing in the language of the 2010 amendment that indicates that the Virgin Islands Legislature "expressly prescribed" that its new definition of a "regular" employee should apply to cases pending at the time of its enactment. Because we discern no such express command, we next determine whether the amendment would have a "retroactive effect" if applied to Gerard and Iles. If it would have such a retroactive effect, then the traditional presumption directs that it would not govern Gerard and Iles's claims, given the absence of clear congressional intent to the contrary.

Landgraf teaches that a statute has "retroactive effect" when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. Here, applying the new definition of a "regular" employee to Gerard and Iles would both expand de Jongh's liability for past conduct and impose new duties on de Jongh with respect to completed transactions by requiring him to reinstate Gerard and Iles, provide them with notice and a hearing, and make a showing of cause before terminating them. Moreover, applying the new definition of a "regular" employee to Gerard and Iles would conflict with "considerations of fair notice [to de Jongh]" and frustrate de Jongh's "reasonable reliance [on the existing statute], and

15

settled expectations . . ." that he was permitted to terminate Gerard and Iles without cause or a hearing. Id. at 270. All of these considerations "offer sound guidance" that the amendment, if applied to Gerard and Iles, would have a retroactive effect. Id. Because the Virgin Islands Legislature has not expressly stated that the amendment to § 530 should apply to suits arising before it was enacted, and because we find that that the amendment would have a "retroactive effect" under Landgraf, the traditional presumption that the amendment does not govern applies. Instead, we review the claims of Gerard and Iles under the definition of a "regular" employee that existed at the time their suit arose. Accordingly, because Gerard and Iles are not "regular" employees under that definition, as we previously explained, they lack a due process property interest in their employment.

**E.**

Although we vacate the preliminary injunction, we nevertheless find that, even had we affirmed the injunction, the District Court's award of back pay to Gerard and Iles would have been erroneous as a matter of law. The District Court concluded that under § 1983, Governor de Jongh could be sued in his official capacity for back pay. In reaching this conclusion, it relied on our previous statement that the remedy of reinstatement and the accompanying restoration of back pay generally constitutes a form of injunctive relief. Gurmankin v. Costanzo, 626 F.2d 1115, 1122 (3d Cir. 1980). It also relied on language in Will v. Michigan Dep't of State Police, which provided that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 . . ." 491 U.S. 58, 71 & n.10 (1989).

16

The District Court appears to have taken the language in <u>Will</u> to permit a public official to be sued in his official capacity under § 1983 for <u>all</u> injunctive relief, rather than merely for <u>prospective</u> injunctive relief. However, <u>Will</u> makes clear that a state employee may be sued in his official capacity only for "prospective" injunctive relief, because "official-capacity actions for prospective relief are not treated as actions against the State." <u>Id.</u> at n.10. (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985); <u>Ex parte Young</u>, 209 U.S. 123, 159-60 (1908)). We have previously upheld this key distinction, affirming the dismissal of § 1983 claims for past wages even when presented as claims for "injunctive relief," because those claims were retrospective rather than prospective. <u>See, e.g.</u>, <u>McCauley v. Univ. of the Virgin Islands</u>, 618 F.3d 232, 240-41 (3d Cir. 2010) (holding that, under § 1983, plaintiffs "cannot seek money damages" but can "seek prospective injunctive relief" against University of the Virgin Islands personnel in their official capacities); <u>Brow v. Farrelly</u>, 994 F.2d 1027, 1037 & n.12 (3d Cir. 1993) (upholding dismissal of claim for "injunctive" relief, including past wages and benefits, because it "was essentially a claim for retrospective damages . . . and thus not actionable against territorial officials in their official capacities under 42 U.S.C. § 1983").

Accordingly, the District Court's award of back pay, although injunctive in nature, is impermissible retrospective relief and would be reversed even had we affirmed the preliminary injunction.

## III.

For the foregoing reasons, we reverse the decision of

17

the District Court, vacate the preliminary injunction, and remand for further proceedings not inconsistent with this opinion.