**MOHAMMED HAMED, by his authorized agent WALEED HAMED,**
**Plaintiff**
v.
**FATHI YUSUF and UNITED CORPORATON, Defendants**

Civil No. SX-12-CV-370

Superior Court of the Virgin Islands

Division of St. Croix

April 25, 2013

117

BRADY, *Judge*

## MEMORANDUM OPINION

(April 25, 2013)

**THIS MATTER** is before the Court on Plaintiff's Emergency Motion and Memorandum to Renew Application for TRO ("Renewed Motion"),

119

filed January 9, 2013, renewing his September 18, 2012 Motion for a Temporary Restraining Order and/or a Preliminary Injunction. Hearing on the Renewed Motion was held on January 25, 2013 and continued on January 31, 2013. Having reviewed the Renewed Motion, evidence and argument of counsel presented at the hearing, along with the voluminous filings of the parties in support of and in opposition to the Renewed Motion, this matter has been converted to that of a Preliminary Injunction pursuant to FED. R. CIV. P. 65(a). Upon review of the record, the Court herein makes findings of fact and conclusions of law, pursuant to FED. R. CIV. P. 52(a)(2), and GRANTS Plaintiff's Renewed Motion.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 4 V.I. CODE § 76(a), which grants the Superior Court "original jurisdiction in all civil actions regardless of the amount in controversy." Likewise, under 5 V.I. CODE § 1261, courts of record are empowered to "declare rights, status, and other legal relations whether or not further relief is or could be claimed.... The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." A request for injunctive relief is addressed to the sound discretion of the Court. *Shire US Inc. v. Barr Laboratories, Inc.*, 329 F.3d 348, 352 (3d Cir. 2003). This Court may grant equitable (i.e. injunctive) relief as Plaintiff seeks in his Renewed Motion to enforce a partner's rights regarding partnership profits and management and conduct of the partnership business pursuant to 26 V.I. CODE § 75(b).

## STANDARD

The Court must consider four factors when reviewing a motion for preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by the denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (2012), citing *Iles v. de Jongh*, 638 F.3d 169, 55 V.I. 1251, 1256 (3d Cir. 2011), (quoting *McTernan v. City of New York*, 577 F. 3d 521, 526 (3d Cir. 2009).

120

## STATEMENT OF ISSUES

By his Verified Complaint, Plaintiff alleges that Defendants, acting personally and through authorized agents, committed several unilateral acts in contravention of the partnership relationship between Plaintiff and Defendant Fathi Yusuf ("Yusuf") and established understandings and agreements among the parties. Plaintiff avers that those acts threaten the businesses and his interests in the businesses established by the partnership as a result of those agreements. Accordingly, Plaintiff demands injunctive and declaratory relief to determine the status of the parties' relationships and the framework under which they must conduct their business operations in light of those relationships. Upon review of the parties' case and controversy, submissions and presented evidence, the Court makes the following findings of fact.

## FINDINGS OF FACT

1. Plaintiff and Defendant Yusuf have a longstanding friendship and familial history which preceded their business relationship. *January 25, 2013 Evidentiary Hearing Transcript, at 196-198*, hereinafter *Tr. 196-198, Jan. 25, 2013*.

2. In 1979, Fathi Yusuf incorporated United Corporation ("United") in the U.S. Virgin Islands. *Defendants' Evidentiary Hearing Exhibit, no. 7*, hereinafter *Def. Ex. 7*.

3. United subsequently began construction on a shopping center located at Estate Sion Farm, St. Croix. Thereafter, Defendant Yusuf desired and made plans to build a supermarket within the shopping center. *Plaintiff's Evidentiary Hearing Exhibit, no. 1 (Transcript, February 2, 2000 Oral Deposition of Fathi Yusuf: Idheileh v. United Corp. and Yusuf, Case No. 156/1997, Territorial Court of the Virgin Islands, Div. St. Thomas and St. John), at 8, lines 1-14*; hereinafter *Pl. Ex. 1, p. 8:1-14*.[1]

4. Subsequently, Yusuf encountered financial difficulty in completing construction of the shopping center and opening the supermarket, was unable to procure sufficient bank loans, and told Plaintiff Mohammad Hamed ("Hamed") that he was unable to finance the

---

[1] The Court has taken judicial notice of the certified copy of the deposition transcript in the noted Territorial Court action, submitted as Pl. Ex. 1. *See* discussion at *Tr. 6-9, Jan. 25, 2013*.

completion of the project. At Yusuf's request, Hamed provided funding to Yusuf's project from proceeds of Hamed's grocery business. *Pl. Ex. 1, p. 14:4-15:14.*

5. Flamed provided Yusuf with monies to facilitate completion of construction on the shopping center and to facilitate opening the Plaza Extra supermarket in Estate Sion Farm, St. Croix. *Tr. 197:5-199:13, Jan. 25, 2013.*

6. Upon Yusuf's request, Hamed sold his two grocery stores to work exclusively as a part of Plaza Extra. *Tr. 200:4-15, Jan. 25, 2013.*

7. Hamed contributed to Yusuf's project funds as they were available to him, including the entire proceeds from the sale of his two grocery stores, with the agreement that he and Yusuf would each be a 50% partner in the Plaza Extra Supermarket, "in the winning or loss." *Tr. 200:16-23, Jan. 25, 2013.*

8. Hamed initially became a 25% partner of Yusuf, along with Yusuf's two nephews who each also had a 25% interest in the Plaza Extra Supermarket business. *Pl. Ex. 1, p. 15:2-14.*

9. Yusuf sought additional bank financing to complete the construction of the building for the Plaza Extra business, which loan application was eventually denied, as a result of which Yusuf's two nephews requested to have their funds returned and to leave the partnership. *Pl. Ex. 1, p. 17:6-24.*

10. With the withdrawal of Yusuf's nephews, the two remaining partners of the Plaza Extra Supermarket business were Hamed and Yusuf. Notwithstanding the financing problems, Hamed determined to remain with the business, having contributed a total of $400,000 in exchange for a 50% ownership interest in the business. *Pl. Ex. 1. p. 17:24-19:10.*

11. Yusuf and Hamed were the only partners in Plaza Extra by the time in 1986 when the supermarket opened for business and Hamed has remained a partner since that time *Pl. Ex. 28.*[2]

---

[2] Subsequent to the evidentiary hearing but before the parties submitted their post-hearing briefs, Plaintiff on February 19, 2013 filed his Second Request to Take Judicial Notice and Request to Supplement the Hearing Record, presenting proposed Plaintiffs Exhibits 28, 29 and 30. By separate Order of this date, Plaintiff's Request was granted. Exhibit 28 is com-

12. As a partner in the Plaza Extra Supermarket business, Hamed was entitled to fifty (50%) percent of the profit and liable for fifty (50%) of the "payable" as well as loss of his contribution to the initial start-up funds. *Tr. 44:12-21; 200:16-23; 206:23-25, Jan. 25, 2013; Pl. Ex. 1, p. 18:16-23; p. 23:18-25.*

13. Yusuf and Hamed have both acknowledged their business relationship as a partnership of an indefinite term. *Pl. Ex. 1, p. 18:18-23* ("I'm obligated to be your partner as long as you want me to be your partner until we lose $800,000."); *Tr. 210:4-8, Jan. 25, 2013* (Q: "How long is your partnership with Mr. Yusuf supposed to last? When does it end?" A: "Forever. We start with Mr. Yusuf with the supermarket and we make money. He make money and I make money, we stay together forever.").

14. Yusuf testified in the *Idheileh* case that it was general public knowledge that Yusuf was a business partner with Hamed even before the Plaza Extra supermarket opened. *Pl. Ex. 1, p. 20:10-12.*

15. Yusuf has admitted in this case that he and Hamed "entered into an oral joint venture agreement" in 1986 by which Hamed provided a "loan" of $225,000 and a cash payment of $175,000 in exchange for which "Hamed [was] to receive fifty percent (50%) of the net profits of the operations of the Plaza Extra supermarkets" in addition to the "loan" repayment. Yusuf states that the parties' agreement provided for "a 50/50 split of the profits of the Plaza Extra Supermarket stores." *Pl. Ex. 2, p. 3,4.* Indeed, Yusuf confirms that "[t]here is no disagreement that Mr. Hamed is entitled to fifty percent (50%) of the profits of the operations of Plaza Extra Store. . . .The issue here again is not whether Plaintiff Hamed is entitled to 50% of the profits. He is." *Pl. Ex. 3, p. 11.*

16. In 1992-1993, a second Plaza Extra supermarket was opened on the island of St. Thomas, USVI, initially with a third "partner," Ahmad Idheileh, who later withdrew leaving a "50/50" ownership interest in the St. Thomas Plaza Extra between Yusuf and Homed. *Tr. 27:1-28:14, Jan. 25, 2013.*

prised of selected Defendants' Responses to Plaintiff's Second Set of Interrogatories to Defendants in that matter known as *Idheileh v. United Corp. and Yusuf, Case No. 156/1997, Territorial Court of the Virgin Islands, Div. St. Thomas and St. John.*

17. At present, there are three Plaza Extra Supermarkets which employ approximately six hundred people on St. Croix and St. Thomas. *Tr. 238:4-6, Jan 25, 2013.*

18. In the *Idheileh* litigation, Yusuf provided an affidavit wherein he stated that "[m]y brother in law, Mohamed Hamed, and I have been full partners in the Plaza Extra Supermarket since 1984 while we were obtaining financing and constructing the store, which finally opened in 1986." *Pl. Ex. 1, Affidavit of Fathi Yusuf, Deposition Ex. 6.*[3]

19. Hamed and Yusuf have jointly managed the stores by having one member of the Hamed family and one member of the Yusuf family co-manage each of the three Plaza Extra Supermarkets. Originally, Hamed and Yusuf personally managed the first Plaza Extra store, with Hamed in charge of receiving, the warehouse and produce, and Yusuf taking care of the office. *Tr. 26:11-19; 206:20-22, Jan 25, 2013.* Yusuf's management and control of the "office" was such that Hamed was completely removed from the financial aspects of the business, concerning which Hamed testified "I'm not sign nothing. . . . Fathi is the one, he sign. Mr. Yusuf the one he sign the loan, the first one and the second one." *Tr. 207:16-21, Jan. 25, 2013.*

20. During recent years, in every store there is at least, one Yusuf and one Hamed who co-manage all aspects of the operations af each store. Mafeed Hamed and Yusuf Yusuf have managed the Estate Sion Farm store along with Waleed Hamed. Waheed Hamed, Fathi Yusuf and Nejah Yusuf operate the St. Thomas store, and Hisham Hamed and Mahar Yusuf manage the Plaza West store on St. Croix. *Tr. 31:6-35:11; 147:11-20; 160:10-22, Jan. 25, 2013,* and *Tr. 33:6-17, Jan. 31, 2013.*

21. In operating the "office," Yusuf did not clearly delineate the separation between United "who owns United Shopping Plaza" and Plaza Extra, despite the fact that from the beginning Yusuf intended to and did "hold the supermarket for my personal use." *Pl. Ex. 1,*

---

[3] At the conclusion of the second day of the hearing, counsel agreed to supplement the record to include exhibits to Plaintiff's Exhibit 1, the February 2, 2000 deposition of Fathi Yusuf. *Tr. 129-130, Jan. 31, 2013.* Deposition Exhibits 6 and 7 were provided with Plaintiff's Notice of Filing Supplemental Deposition Exhibits, filed February 19, 2013.

*p. 8:1-7.* Despite the facts that the supermarket used the trade name "Plaza Extra" registered to United (*Pl. Ex. 4, ¶14*) and that the supermarket bank accounts are in the name of United (*Pl. Ex's. 15, 16*), "in talking about Plaza Extra . . . when it says United Corporation . . . [i]t's really meant me [Yusuf] and Mr. Mohammed Hamed." *Pl. Ex. 1, p. 69:13-21.*

22. Yusuf admitted in the *Idheileh* action that Plaza Extra was a distinct entity from United, although the "partners operated Plaza Extra under the corporate name of United Corp." *Pl. Ex. 28, Response to Interrogatory 6.*

23. The distinction between United and the Plaza Extra Supermarkets is also apparent from the fact that United, as owner of United Shopping Center, has sent rent notices to Hamed on behalf of the Sion Farm Plaza Extra Supermarket, and the supermarket has paid to United the rents charged. *Pl. Ex's. 7, 8, 9; Tr. 48:24-51:9; 212:18-214:15, Jan. 25, 2013.*

24. In 2003, United was indicted for tax evasion in federal court, along with Yusuf and several other members of the Hamed and Yusuf families in that matter in the District Court of the Virgin Islands, Division of St. Croix, known as *United States and Government of the Virgin Islands v. Fathi Yusuf, et al., Crim. No. 2005-15* ("the Criminal Action"). However, Plaintiff Mohammed Hamed was not indicted. *Tr. 222:11-223:6; 134:15-23, Jan. 25, 2013.*

25. In connection with the Criminal Action, the federal government appointed a receiver in 2003 to oversee the Plaza Extra Supermarkets, who deposits all profits into investment accounts at Banco Popular Securities and, originally, at Merrill-Lynch. Those "profits" accounts remain at Banco Popular Securities to the present. *Tr. 41:15-42:18; 137:13-138:19, Jan. 25, 2013.*

26. In 2011, United pled guilty to tax evasion in the Criminal Action. Charges were dismissed against the other Defendants, by Plea Agreement filed February 26, 2011. *Def. Ex. 2, p. 2.*

27. The Criminal Action against United remains pending, as the terms of the Plea Agreement require "complete and accurate" tax filings. United has filed no tax returns since 2002, although estimated taxes have been paid from the grocery store accounts, and mandatory ac-

125

counting procedures for Plaza Extra have been adopted. *Tr. 241:23-245:12, Jan 25, 2013; Tr. 90:4-16, Jan 31, 2013; Def. Ex. 2.*

28. At some point between late 2009 and 2011, at Yusuf's suggestion, the Hamed and Yusuf families agreed that all checks drawn on Plaza Extra Supermarket accounts had to be signed by one member of the Hamed family and one member of the Yusuf family. *Tr. 100:11-16, 228:2-11, Jan. 25, 2013.*

29. In late 2011, United had its newly retained accountant review a hard drive containing voluminous financial records related to the Criminal Action, following which Yusuf accused members of the Hamed family of stealing money from the supermarket business and threatening to close the store and to terminate the United Shopping Plaza lease. *Tr. 52:5-10, Jan. 31, 2013; Tr. 51:18-52:8, Jan. 25, 2013.*

30. Thereafter, discussions commenced initiated by Yusuf's counsel regarding the "Dissolution of Partnership." *Pl. Ex. 10, 11, 12.* On March 13, 2012, through counsel, Yusuf sent a Proposed Partnership Dissolution Agreement to Hamed, which described the history and context of the parties' relationship, including the formation of an oral partnership agreement to operate the supermarkets, by which they shared profits and losses. *Pl. Ex. 12.*[4] Settlement discussions followed those communications but have not to date resulted in an agreement. *Tr. 58:15-20, Jan. 25, 2013.*

31. Although Plaintiff retired from the day-to-day operation of the supermarket business in about 1996, Waleed Hamed has acted on his behalf pursuant to two powers of attorney from Plaintiff. *Tr. 45:24-48:2; 172:6-173:8; 202:18-25, Jan. 25, 2013; Pl. Ex. 1, Affidavit of Fathi Yusuf, Depos. Exh. 6, ¶ 4.* Both Plaintiff and Yusuf have designated their respective sons to represent their interests in the operation and management of the three Plaza Extra stores. *Tr. 31:6-35:11, Jan. 25, 2013.*

---

[4] These exhibits were admitted at hearing over Defendants' objection premised on FED. R. EVID. 408. The evidence was not offered to prove the validity or amount of Plaintiff's claims, but rather to put into context the history of the parties' relationship which may be accepted as evidence for another purpose under R. 408(b). Further, the exhibits offer nothing beyond evidence presented wherein Yusuf has similarly characterized the history of his relationship with Plaintiff.

32. It had been the custom and practice of the Yusuf and Hamed families to withdraw funds from the supermarket accounts for their own purposes and use (see *Def. Ex. 1; Pl. Ex. 27*), however such withdrawals were always made with the knowledge and consent of the other partner. *Tr. 138:20-139:8, Jan. 25, 2013; Tr. 121:3-123:9; Jan. 31, 2013.*

33. Waleed Hamed testified that Fathi Yusuf utilized Plaza Extra account funds to purchase and subsequently sell property in Estate Dorothea, St. Thomas, to which it was agreed that Hamed was entitled to 50% of net proceeds. Although Yusuf's handwritten accounting of sale proceeds confirms that Hamed is due $802,966, representing 50% of net proceeds (*Pl. Ex. 18*), that payment has never been made to Hamed and the disposition of those sale proceeds is not known to Hamed. *Tr. 88:8-90:17, Jan. 25, 2013.*

34. Each of the three Plaza Extra Supermarkets maintains and accounts for its operations separately, with separate bank accounts. In total, the stores maintain a total of approximately eleven accounts. *Tr. 35:12-20; 36:22-38:25; 229:10-13, Jan. 25, 2013.*

35. On or about August 15, 2012, Yusuf wrote a check signed by himself and his son Mahar Yusuf and made payment to United in the amount of $2,784,706.25 from a segregated Plaza Extra Supermarket operating account, despite written objection of Waleed Hamed on behalf of Plaintiff and the Hamed family, who claimed that, among other objections, the unilateral withdrawal violated the terms of the District Court's restraining order in the Criminal Action. *Tr. 246:1-250:14, Jan. 25, 2013; Pl. Group Ex. 13.*

36. On the first hearing day, Mahar Yusuf, President of United Corporation testified under oath that he used the $2,784,706.25 withdrawn from the Plaza Extra operating account to buy three properties on St. Croix in the name of United. On the second hearing day, Mahar Yusuf contradicted his prior testimony and admitted that those withdrawn funds had actually been used to invest in businesses not owned by United, including a mattress business, but that none of the funds were used to purchase properties overseas. *Tr. 250:2-251.15, Jan. 25, 2013; Tr. 118:12-120:2, Jan. 31, 2013.*

37. A restraining order was entered by the District Court in the Criminal Action which remains in place and restricts withdrawal of funds

representing profits from the supermarkets that have been set aside in the Banco Popular Securities brokerage account pending the conclusion of the Criminal Action or further order of that Court. *Tr. 41:15-42:18; 119:4-12, Jan. 25, 2013*. The Criminal Action will remain pending until past tax returns are filed. *Tr. 134:15-136:22; 242:16-245:5, Jan. 25, 2013*. As of January 18, 2013, the brokerage account had a balance of $43,914,260.04. *Def. Ex. 9*. This Court cannot enforce the restraining order or otherwise control any aspect of the Criminal Action or its disposition.

38. Funds from supermarket accounts have also been utilized unilaterally by Yusuf, without agreement of Hamed, to pay legal fees of defendants relative to this action and the Criminal Action, in excess of $145,000 to the dates of the evidentiary hearing. *Tr. 76:5-82:9, Jan. 25, 2013; Pl. Ex. 15, 16.*[5]

39. Since at least late 2012, Yusuf has threatened to fire Hamed family managers and to close the supermarkets. *Tr. 149:20-150:22; 158:18-159:12; 253:25-254:19, Jan. 25, 2013*.

40. On January 8, 2013, Yusuf confronted and unilaterally terminated 15 year accounting employee Wadda Charriez for perceived irregularities relative to her timekeeping records of her hours of employment, threatening to report her stealing if she challenged the firing or sought unemployment benefits at Department of Labor, *Tr. 181:20-185:16, Jan. 25, 2013*. Charriez had a "very critical job" with Plaza Extra (*Tr. 179:17-19, Jan. 25, 2013*), and the independent accountant retained by Yusuf agreed that she was "a very good worker" and that her work was "excellent." *Tr. 94:2-6, Jan. 31, 2013*. Because the Hamed co-managers had not been consulted concerning the termination or shown any proof of the employee's improper activity, Mafeed Hamed instructed Charriez to return to

---

[5] Plaintiff has submitted Exhibit 30 with his February 19, 2013 Second Request to Take Judicial Notice and Request to Supplement the Hearing Record, granted by separate Order. Defendants' opposition to Plaintiffs' Motion did not address Exhibit 30, consisting of two checks in the total sum of more than $220,000 in payment to defense counsel in this action, dated January 21, 2013 and February 13, 2013, drawn on a supermarket account by Defendants without Plaintiffs' consent. Although the evidence is cumulative and not essential to the Court's decision herein, it reflects an ongoing practice of unilateral withdrawals and the possibility of continuing unilateral action in the future.

work the following day. *Tr. 179:4-24; 185:17-186:8, Jan. 25, 2013.* On Charriez' January 9, 2013 return to work, Yusuf started screaming at her, and told her to leave or he would call the police. *Tr. 186:9-187:1, Jan. 25, 2013.* Yusuf did call police and demanded on their arrival that Charriez, and Mufeed Hamed and Waleed Hamed be removed from the store, and threatened to close the store. *Tr. 93:5-94:15; 164:19-165:18; 187:5-188:8, Jan. 25, 2013.* The incident that occurred on January 9, 2013, the same day that Plaintiff's Renewed Motion was filed, coupled with other evidence presented demonstrates that there has been a breakdown in the co-management structure of the Plaza Extra Supermarkets. *Tr. 141:25-142:18; 143:17-146:19; 166:21-167:8, Jan 25, 2013.*

41. "By the time Plaza Extra opened in 1986, Mohamed Hamed and Defendant Yusuf were the only partners. These partners operated Plaza Extra under the corporate name of United Corp." *Pl. Ex. 28, Response to Interrogatory 6.* Defendants now claim that Yusuf is the owner of only 7.5% of the shares of United (*Pl. Ex. 2, p. 11*), which could adversely affect Plaintiff's ability to enforce his claims as to the partnership "operated [as] Plaza Extra under the corporate name of United Corp."

## DISCUSSION

■ Although this matter is before the Court on Plaintiff's Renewed Motion that seeks a temporary restraining order, the parties agree that following the full evidentiary hearing conducted, the relief Plaintiff seeks is a preliminary injunction pursuant to FED. R. CIV. P. 65(a). The Court cannot issue a preliminary injunction unless on the basis of the evidence on the record, Plaintiff prevails as to each of the four factors recently delineated by the Virgin Islands Supreme Court in *Petrus*, namely: (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by the denial of the relief; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) granting the preliminary relief will be in the public interest. 56 V.I. at 554. Only if the movant produces evidence sufficient to convince the Court that all four factors favor preliminary relief should the injunction issue. *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990).

129

The evidentiary record before the Court includes the testimony of witnesses and documentary exhibits. Those exhibits include prior filings of the parties in this case by which the parties are bound by virtue of the doctrine of judicial admissions. *Berckley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 211 n. 20 (3d Cir. 2006); *Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004). Those exhibits also include filings in prior unrelated cases, which are admissible as admissions of such party against its interest, pursuant to FED. R. EVID. 801(d).[6]

The Court will consider the four factors required for the issuance of a preliminary injunction *in seriatim*, and makes the following conclusions of law.

## CONCLUSIONS OF LAW

### Probability of Movant's Success on the Merits.

1. Plaintiff seeks to establish that his business relationship with Yusuf of more than 25 years constitutes a Virgin Islands partnership, notwithstanding the lack of any written partnership agreement and the failure of the business to file Virgin Islands partnership tax returns or to provide K-1 forms to report partners' distributive share of income, among other factors urged by Defendants. Whether the relationship will be characterized as a partnership is governed by the Uniform Partnership Act ("UPA"), adopted in 1998 as Title 26, Chapter 1 of the Virgin Islands Code.

2. Under the UPA, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." 26 V.I. CODE § 22(a). In the mid-1980's when the Hamed-Yusuf business relationship began, a Virgin Islands partnership was defined as "an association of two or more persons to carry on as co-owners a business for profit." *Former* 26 V.I. CODE § 21(a).

3. Under the UPA, "A person who receives a share of the profits of a business is presumed to be a partner in the business . . ." 26 V.I. CODE § 22(c)(3). Under the former Code provisions, "the receipt by a person of

---

[6] On April 7, 2010, Act No. 7161 became law, section 15 of which established the Federal Rules of Evidence as applicable in this Court. *See Chinnery v. People*, 55 V.I. 508, 525 (2011).

a share of the profits of a business is prima facie evidence that he is a partner in the business . . ." *Former* 26 V.I. CODE § 22 (4).[7]

■ 4. Evidence of "a fixed profit-sharing arrangement" and "evidence of business operation" are factors to be considered in the determination of whether the parties in a business relationship had formed a partnership. *Addie v. Kjaer*, Civ. No. 2004-135, 2011 U.S. Dist. LEXIS 20677, *7 (D.V.I. Mar. 1, 2011).

5. "A partnership agreement is defined as the agreement, whether written, *oral*, or implied, among the partners concerning the partnership, including amendments to the partnership agreement." 26 V.I. CODE § 2(7), *emphasis added.* A "partnership at will" exists where the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." 26 V.I. CODE § 2(8).

■ 6. Defendants protest that there is no written partnership agreement to memorialize the understanding between Yusuf and Hamed. However, as noted, the UPA does not require that such agreements be memorialized by a writing, and further sanctions "at will" agreements that have no definite term or duration, and are subject to dissolution by either partner at any time. As such, partnerships are not within the statute of frauds and need not be in writing. *Smith v. Robson*, 44 V.I. 56, 61 (Terr. Ct. 2001).

■ 7. Even if the statute of frauds were applicable to the formation of a partnership, the doctrine of part performance operates to prevent an inequity where a person is induced or permitted to invest time, money and labor in reliance upon an oral agreement, which agreement would otherwise be voided by the application of the statute of frauds. Accordingly, if a party can show that part of an oral agreement was performed, the oral contract is taken out of the statute of frauds and becomes binding. *Sylvester v. Frydenhoj Estates Corp.*, 47 V.I. 720, 724 (D.V.I. 2006), citations omitted.

---

[7] The Court applies the test in effect at the time the business relationship between the parties was formed (*see Harrison v. Bornn, Bornn & Handy*, 200 F.R.D. 509, 514 (D.V.I. 2001)), and holds that a partnership is found to exist by the admitted sharing of profits of the business unless Defendants' evidence is sufficient to rebut that *prima facie* evidence. However, the distinction between the language in the former statute and the current is of no legal significance. Commentary of the National Conference of Commissioners of Uniform State Laws on the publication of the 1997 of the UPA notes that "no substantive change is intended. The sharing of profits is recast as a rebuttable presumption of a partnership, a more contemporary construction, rather than as prima facie evidence thereof." Formation of Partnership, Unif. Partnership Act § 202, cmt. 3 (1997).

■ 8. Defendants suggest that Hamed and Yusuf entered into a joint venture rather than a partnership. A joint venture has been defined as a partnership for a single transaction, recognized as a subspecies of partnership, and is analyzed under Virgin Islands law in the same manner as is a partnership. *Boudreaux v. Sandstone Group*, 36 V.I. 86, 97 (Terr. Ct. 1997), citing *Fountain Valley Corp. v. Wells*, 98 F.R.D. 679, 19 V.I. 607 (D.V.I.1983).

9. Yusuf and Hamed, acting under the name "United Corporation," entered into their relationship with Ahmad Idheileh "to open and operate a supermarket on St. Thomas" by means of a Joint Venture Agreement. *Pl. Ex. 1, Dep. Ex. 7*. This "business relationship created by agreement of the parties for the purpose of profit" was formed "for a single undertaking or transaction," and was to "terminate at the conclusion of their stated purpose, by agreement, or at the will of the parties." *C&C Manhattan v. Gov't of the V.I.*, 46 V.I. 377, 384 (D.V.I. 2004), citations omitted. To the contrary, the self-described "partnership" of Hamed and Yusuf, formed for profit, with no set duration, involved the development of a business enterprise, including the three supermarkets and other business projects spanning two and a half decades.

10. The Court concludes that Defendants' recent claims that the parties have been engaged in a joint venture and not a partnership are not credible as they contradict the record before the Court and the long history prior to this litigation of admissions by Yusuf, who did not testify at the hearing, to the effect that he and Hamed are "50/50" partners. Those pre-litigation admissions of the existence of a partnership have been consistent over many years, including through his notice to Hamed of his dissolution of their partnership in the months prior to this litigation.

■ 11. Defendants argue that Defendant United has owned and operated the businesses known as Plaza Extra, and that Hamed's claims must fail because he concedes that he has no ownership interest in United. To the contrary, the record clearly reflects that Yusuf's use of the Plaza Extra trade name registered to United, the use of bank accounts in United's name to handle the finances of the three supermarkets and other participation of the corporate entity in the operation of the stores was all set up in the context of Yusuf's partnership with Hamed, as Yusuf has consistently admitted. The existence of a partnership is not negated by the use of the corporate form to conduct various operations of the partnership. *McDonald v. McDonald*, 53 Wis. 2d 371, 192 N.W.2d 903, 908 (Wis.

1972). The fact that the partner conducting the business utilizes a corporate form does not change the essential nature of the relationship of the parties. *Granik v. Perry*, 418 F.2d 832, 836 (5th Cir. 1969).

■ 12. Where, as here, the parties agree that one partner is designated to take charge of "the office" and assumes the responsibility for obtaining or filing the relevant documents as a part of his share of the partnership responsibilities, his failure to file that documentation in the name of the partnership does not mean that no partnership exists. Partners may apportion their duties with respect to the management and control of the partnership such that one partner is given a greater share in the management than others. Thus, the fact that one partner may be given a greater day-to-day role in the management and control of a business than another partner does not defeat the existence of the partnership itself. *Al-Yassin v. Al-Yassin*, 2004 Cal. App. Unpub. LEXIS 2886 (Cal. Ct. App. 2004). Where one party actively pursues the partnership business, such business must be conducted in keeping with "fundamental characteristics of trust, fairness, honesty, and good faith that define the essence of the partners' relationship." *Alpart v. Gen. Land Partners Inc.*, 574 F.Supp. 2d 491, 500 (E.D. Pa. 2008).

■ 13. It is undisputed that Plaintiff and Yusuf agreed from the time prior to the opening of the first store to share profits from the business on a 50/50 basis and that they did so share profits. These elements of their business relationship present a *prima facie* case for the existence of a partnership under the former 26 V.I. CODE § 22(4), applicable at the time of the formation of the partnership. Defendants have not presented evidence sufficient to overcome Plaintiff's *prima facie* proof of the partnership of the parties.[8]

14. Various other indicia of the existence of the formation of a partnership are present in the record, including the fact that the parties intended to and did associate with each other carry on as co-owners a business for profit (26 V.I. CODE § 22(a)). The parties agreed to share the net profits of the business "50/50" (26 V.I. CODE § 22(c)(3)). Each of the parties contributed money and services to commence the business

---

[8] The analysis and the result are the same if the evidence is determined to give rise to the presumption of the existence of a partnership of the parties tinder the current 26 V.I. CODE § 22(c)(3), the Virgin Islands UPA. Defendants' proofs are insufficient to rebut the presumption of the existence of a partnership.

operation. The parties agreed that their relationship would continue without any definite term. The parties jointly shared the risks of the business and agreed to equally share any losses of the business. By dividing the initial management of the business between the warehouse, receiving and produce (Hamed) and the office (Yusuf), the parties jointly managed the business. As years passed and additional stores opened, joint management continued with the sons of each of the parties co-managing all aspects of each of the stores.

15. On the basis of the record before the Court and the foregoing, Plaintiff has demonstrated a reasonable probability that he will succeed on the merits of his claim as to the existence of a partnership between himself and Yusef with regard to the three Plaza Extra stores.

**Irreparable injury to Movant by denial of relief.**

16. As the Court finds that there is a reasonable probability of Plaintiff's success in proving the existence of a partnership, he is entitled to the benefits of his status as a partner, including "an equal share of the partnership profits" and "equal rights in the management and conduct of the partnership business." 26 V.I. CODE § 71(b) and (f).

17. Plaintiff maintains this action seeking equitable relief, and this Court may grant such equitable (i.e. injunctive) relief to enforce Plaintiff/partner's rights to an equal share of the partnership profits and equal rights in the management and conduct of the partnership, pursuant to 26 V.I. CODE §75(b)(1) and (2)(i).

18. Yusuf forcefully contends that this case is solely about money damages, and any damage to Plaintiff is economic damage only, which can be remedied by an award of monetary damages. "[A] preliminary injunction should not be granted if the injury suffered by the moving party can be recouped in monetary damages." *IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*, 250 Fed. Appx. 476, 479 (3d Cir. 2007), citations omitted. Although the alleged diversion of more than $3,000,000 constitutes a primary focus of Plaintiff's claims for relief, he also seeks to remedy what he alleges to be usurpation by Yusuf of his "equal rights in the management and conduct of the partnership."

19. To establish irreparable harm, Plaintiff must show that his legal remedies (i.e. the potential award of a money judgment) are inadequate. If the plaintiff suffers a substantial injury that cannot be

134

accurately measurable or adequately compensable by an award of money damages, irreparable harm may be found. *Ross-Simons of Warwick, Inc. v. Baccarat*, 102 F.3d 12, 18-19 (1st Cir. 1996). An award of monetary damages may not provide an adequate remedy where the amount of monetary loss alleged is not capable of ascertainment. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).[9] Further, injunctive relief may be available where the movant can "demonstrate that there exists some cognizable danger of recurrent violation of its legal rights." *Anderson v. Davila*, 125 F.3d 148, 164, 37 V.I. 496 (3d Cir. 1997), *quoting United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953), internal quotations omitted.

20. Plaintiff alleges recurring violations of his legal rights to equal participation in the management and conduct of the partnership business. In addition, Plaintiff claims that the diversion of partnership revenues to accounts inaccessible to Plaintiff without accounting or explanation constitutes a showing of irreparable harm because of the threat that similar diversions will occur in the future and diverted funds may be removed from the jurisdiction of the Court rendering a monetary judgment ineffectual. *See Health and Body Store, LLC v. Just Brand Limited*, 2012 U.S. Dist. LEXIS 129917 (E.D. Pa. Sept. 11, 2012).

21. The record reflects that Yusuf has arbitrarily addressed employee issues, including termination of a long-term high level employee and has threatened to close the stores. (*See Findings of Fact*, ¶40). Evidence exists in the record to the effect that co-managers in Plaza Extra East no longer speak with each other (*Tr. 166:21-167:8, Jan. 25, 2013*), that employees are fearful for their jobs (*Tr. 158:18-159:12, Jan. 25, 2013*), and that the tensions between Yusuf and the Hamed family have created a "hard situation" for employees (*Tr. 187:5-188:8*). Plaintiff alleges that such circumstances that flow directly from his deprivation of equal participation in management and control of the supermarkets reflect his loss of control of the reputation and goodwill of the business which

---

[9] With regard to the August 2012 diversion of more than $2.7 million by Mahar Yusuf, president of United, to accounts inaccessible to Plaintiff, a real concern exists that continuing diversions will not be traceable as the Plaza Extra store have had no system of internal controls in existence and, to date accounting for the businesses is not completed beyond June 2012. (Testimony of accountant John Gaffney, *Tr. 71:20-72:3; 75:11-21, Jan. 31, 2013*.) As such, the amount of any monetary loss suffered by Plaintiff may not be capable of ascertainment.

constitute irreparable injury, not compensable by an award of money damages. *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 378 (3d Cir. 1992).

22. Defendant's actions have deprived Plaintiff of his rights to equal participation in the management and conduct of the business. As such, the Court finds that Plaintiff has met his burden of establishing irreparable injury if injunctive relief is not granted.[10]

### The balance of harms favors the Movant.

23. One of the goals of the preliminary injunction analysis is to maintain the status quo, defined as "the last, peaceable, noncontested status of the parties." *Opticians Association of America, supra*, 920 F.2d at 197, citations omitted. For more than 25 years, the parties have been able to equally manage and control their very successful business enterprise. For reasons delineated above, that Plaintiff's rights to equal management and control have been infringed upon by the actions of Defendant. In considering the relief sought by Plaintiff, the Court must assure that granting injunctive relief will not harm Defendants more than denying relief would harm Plaintiff.

24. The remedy sought and the relief to be imposed does not deprive Yusuf of his statutory partnership rights to equal management and control of the business. Rather, it simply assures that Hamed is not deprived of the same legal rights to which he is entitled. Neither party has the right to exclude the other from any part of the business. *Health and Body Store, LLC, supra*, 2012 U.S. Dist. LEXIS 129917. The relief sought and granted to provide equal access to all aspects of the business will not harm Defendants more than the denial of such relief harms Plaintiff.

25. Neither party has sought and the Court has not considered the prospect of appointing a receiver or bringing in any other outsider to insure that the joint management and control of the partnership is

---

[10] Most troubling is the substance of Plaintiff's Motion to Supplement the Record, dated and filed April 23, 2013, after the Opinion was largely completed. Therein, Waleed Hamed states that the Hamed family has been denied access to the supermarket accounts and signature authorization to Hamed family members has been revoked by the depository banks based upon instructions from Yusuf. Deprivation of access to bank accounts and signature authorization on bank accounts clearly constitute denial of partnership management rights not compensable by an award of monetary damages.

maintained. Rather, notwithstanding the animosity that exists between the parties, they are left to work out issues of equal management and control themselves as they have done successfully over the years.

### Public interest favors injunctive relief.

■ 26. The public interest is best served by the continued success of Plaza Extra Supermarkets or, in the alternative, by the orderly dissolution or winding down of the business relationship of the parties pursuant to their own agreement. Enforcement of statutory rights of the partners is best suited to accomplish that end.

27. The public interest is served by the continued employment of 600 Virgin Islanders and the continuity of this Virgin Islands institution operated according to law and their agreement. "It is not only in the interest of [Plaintiff] that this court grant a preliminary injunction against [Defendants], but it is in the public interest to ensure that the management of [Plaza Extra Supermarkets] be properly maintained and the premises remain available for public use — they being an integral part of the St. Croix economy." *Kings Wharf Island Enterprises, Inc. v. Rehlaender*, 34 V.I. 23, 29 (Terr. Ct. 1996).

### CONCLUSION

Injunctive relief is appropriate to preserve the status quo of the parties, their partnership and business operations, by ensuring that the parties' statutory rights are preserved and enforced. The Court's Order entering injunctive relief must state its terms specifically and describe in reasonable detail the act or acts restrained. *Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 700 (2011), quoting FED. R. CIV. P. 65(d)(1)(B) and (C).

Consistent with this Court's Findings of Fact and Conclusions of Law a separate Order of even date will accompany this Memorandum Opinion, directing the parties as follows:

 1. The operations of the three Plaza Extra Supermarket stores shall continue as they have throughout the years prior to this commencement of this litigation, with Hamed, or his designated representative(s), and Yusuf, or his designated representative(s), jointly managing each store, without unilateral action by either party, or representative(s), affecting the management, employees, methods, procedures and operations.

2. No funds will be disbursed from supermarket operating accounts without the mutual consent of Hamed and Yusuf (or designated representative(s)).

3. All checks from all Plaza Extra Supermarket operating accounts will require two signatures, one of a designated representative of Hamed and the other of Yusuf or a designated representative of Yusuf.

4. A copy of the Order accompanying this Opinion will be provided to the depository banks where all Plaza Extra Supermarket operating accounts are held.

5. Plaintiff shall forthwith file a bond in the amount of Twenty-Five Thousand Dollars ($25,000.00) with the Clerk of the Court, and shall provide notice of the posting to Defendants. (Plaintiff's interest in the "profits" accounts of the business now held at Banco Popular Securities shall serve as additional security to pay any costs and damages incurred by Defendants if found to have been wrongfully enjoined.)