IN THE SUPERIOR COURT

**FILED** CIAL PUBLICATION

March 16, 2020

TAMARA CHARLES
CLERK OF THE COURT

**SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| SIXTEEN PLUS CORPORATION,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>MANAL MOHAMMAD YOUSEF,<br>　　　　Defendant/<br>　　　　Counterclaimant. | CASE NO. SX-16-CV-065<br><br>ACTION FOR DECLARATORY JUDGMENT<br><br>JURY TRIAL DEMANDED |
| HISHAM HAMED, derivatively, on behalf of SIXTEEN PLUS CORPORATION,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>FATHI YUSUF; ISAM YOUSEF; and JAMIL YOUSEF,<br>　　　　Defendants,<br><br>　　　and<br><br>SIXTEEN PLUS CORPORATION,<br>　　　　Nominal Defendant. | CASE NO. SX-16-CV-650<br><br>DERIVATIVE SHAREHOLDER SUIT; ACTION FOR DAMAGES, AND CICO RELIEF<br><br>JURY TRIAL DEMANDED |
| MANAL MOHAMMAD YOUSEF a/k/a MANAL MOHAMAD YOUSEF,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>SIXTEEN PLUS CORPORATION,<br>　　　Defendant / Counterclaimant / Third-Party Plaintiff,<br><br>　　　v.<br>FATHI YUSUF,<br>　　　　Third-Party Defendant. | CASE NO. SX-17-CV-342<br><br>ACTION FOR DEBT AND FORECLOSURE OF REAL PROPERTY MORTGAGE<br><br>* * *<br><br>Consolidated with SX-16-CV-065 |

Cite as: 2020 VI Super 43

**Appearances:**

**JOEL H. HOLT, ESQ.**
Law Offices of Joel H. Holt
Christiansted, VI 00820
*For Sixteen Plus Corporation and Hisham Hamed*

**CARL J. HARTMANN III, ESQ.**
Christiansted, VI 00820
*For Sixteen Plus Corporation and Hisham Hamed*

**MARK W. ECKARD, ESQ.**
Hamm Eckard, LLP
Gallows Bay, VI 00820
*For Sixteen Plus Corporation and Hisham Hamed*

**GREGORY H. HODGES, ESQ.**
**CHARLOTTE PERRELL, ESQ.**
**LISA MICHELLE KÖMIVES, ESQ.**
Dudley, Newman Feuerzeig, LLP
St. Thomas, VI 00804
*For Fathi Yusuf*

**JAMES L. HYMES, III**
Law Office of James L. Hymes, P.C.
St. Thomas, VI 00802
*For Manal Mohammad Yousef, Isam Yousef, and Jamil Yousef*

## MEMORANDUM OPINION

**MOLLOY,** *Judge.*

¶1     **THESE MATTERS** came before the Court for a hearing on whether they require "exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." V.I. R. Civ. P. 92(a). Although this Court does believe that these cases do warrant exceptional judicial management, the Court concludes that transferring them to the Complex Litigation Division would be counterproductive. Several related cases are being presided over by another judge, with the assistance of a judicial master. "Assigning related cases to the same

judge can be more efficient because the judge then has knowledge of both cases and their respective procedural histories and can 'issue any other orders' short of formal consolidation 'to avoid unnecessary cost or delay.'" *In re: Kelvin Manbodh Asbestos Litig. Series*, 69 V.I. 394, 422 (Super. Ct. 2018) (quoting V.I. R. Civ. P. 42(a)(3). However, only the above-captioned cases were referred for a determination whether they should be designated as complex. Accordingly, for the reasons stated below, the Court declines to designate the cases as complex.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

¶2      In an August 16, 2019 Order, the Honorable Jomo Meade referred the above-captioned cases to the undersigned judicial officer pursuant to Virgin Islands Rule of Civil Procedure 92(e)(1), "to consider and determine whether th[e] case[s] should be treated as complex subject to the provisions of (b)(c) and (d) of this Rule." (Order 2, entered Aug. 21, 2019.) The Clerk's Office forwarded the cases to the Complex Litigation Division, after which this Court issued an order scheduling a hearing and granted each party leave to file one brief as to whether the cases should be designated as complex. The Court also directed "that any party's appearance at the . . . hearing . . . [would not] be construed as a waiver of any preserved defense or objection to the jurisdiction of the Superior Court of the Virgin Islands." (Order 2, entered Sept. 3, 2019.) Manal Mohammad Yousef ("Manal"), Isam Yousuf ("Isam"), and Jamil Yousuf ("Jamil"), and Hisham Hamed ("Hisham"), Sixteen Plus Corporation ("Sixteen Plus"), and Fathi Yusuf ("Fathi") filed briefs.[1] Counsel for Fathi and counsel for Hisham and Sixteen Plus appeared at the hearing and argued their respective positions. Counsel for Manal, Isam, and Jamil had asked to be excused.

¶3      Some background is necessary to explain what Fathi refers to as the "protracted and acrimonious litigation related to the families' long-term joint business interests," which "encompasses multiple civil cases pending in the courts of the Virgin Islands, including the main case between the parties . . . *Hamed v. Yusuf, et al.*, Case No. SX-12-CV-370 and assigned to the Honorable Douglas A. Brady . . . ." (Fathi's Opp'n to Transfer to Complex Lit. Div. 2, filed Sept. 3, 2019 (hereinafter "Fathi Opp'n").) The dispute between Fathi and Mohammad A. Hamed ("Mohammad") specifically, and the Hameds and the Yusufs in general, has generated no fewer than nineteen cases

---

[1] Because several parties are both plaintiffs and defendants and, further, because multiple people with the same last names are parties to several cases related to the above-captioned cases, the parties will be referred to by their first names throughout this Opinion to avoid confusion.

in the Virgin Islands courts. Judge Meade only referred the three cases captioned above for a determination, because the other cases are assigned to different judges. But the Court must address all the cases to tell the broader story.

¶4     The dispute between the Hameds and the Yusufs was summarized in *Yusuf v. Hamed*, 59 V.I. 841 (2013):

> Yusuf and Hamed grew up as neighbors in a village in the West Bank. In 1973, Hamed immigrated to the United States, settling on St. Croix, where Yusuf lived with his wife. Several years later, in 1979, Yusuf incorporated United Corporation as a Virgin Islands corporation . . . and began constructing the Plaza Extra supermarket in a shopping center owned by United in Estate Sion Farm on St. Croix. After Yusuf was unable to secure funding to complete the store, Hamed sold his two grocery stores and invested a total of $400,000 into the Sion Farm store. According to Hamed, this investment resulted in an equal partnership between Yusuf and Hamed after other investors abandoned the project.
>
> The Sion Farm store opened in 1986, with Yusuf handling the financial aspects of the business, and Hamed managing the store's inventory and warehouse. The Sion Farm store (colloquially known as "Plaza East") proved successful, leading to the construction of two more stores, one in Tutu Park Mall on St. Thomas in 1993 and another in Grove Place on the west end of St. Croix (referred to colloquially as "Plaza West") in 2002. In 1996, Hamed retired from his role in the operations of the business due to illness, giving a power of attorney and delegating his management responsibilities to one of his sons, Waleed Hamed. After Mohammad Hamed's retirement, the Yusuf and Hamed families continued joint management of the stores, with members of both families co-managing each store. . . .
>
> In 2003, United and members of the Yusuf and Hamed families were indicted in the . . . District Court of the Virgin Islands for tax evasion, resulting in a plea agreement entered in 2011. Pursuant to the agreement, United agreed to plead guilty to tax evasion and the charges against the individual members of both families were dismissed. As a result of the criminal proceeding, a federal receiver was appointed to oversee the profits from the Plaza Extra stores in 2003, holding these funds . . . in escrow outside of the parties' control.
>
> Around the time of the plea agreement in 2011, management cooperation between the two families began to break down. The store managers started requiring that a member of both the Yusuf and Hamed families sign off on any distribution of funds from Plaza Extra accounts, and Fathi Yusuf alleged that a review of financial records required by the plea agreement revealed that members of the Hamed family had been stealing money from the stores. Yusuf then attempted to evict Plaza East from United's shopping center . . . . A few months later, Yusuf informed Mohammad

Hamed of his intention to end their business relationship, sending a proposed "Dissolution of Partnership" agreement to Hamed on March 12, 2012, and initiating unsuccessful settlement negotiations. . . .

Using his power of attorney for Mohammad Hamed, Waleed Hamed . . . on September 17, 2012, fil[ed] a complaint against Fathi Yusuf and United Corporation in the Superior Court. The complaint alleged that Fathi Yusuf and Mohammad Hamed had formed a partnership in 1984, through which they agreed to jointly manage the stores and equally share the profits and losses.

*Id.* at 843-45 (citations omitted). This case, *Hamed v. Yusuf,* case number SX-12-CV-370,[2] referred to as the "Main Action" or the "Main Case" by the parties, is assigned to Judge Brady. He issued a preliminary injunction in January 2013 to maintain the status quo between the families and their businesses during litigation. *See Hamed v. Yusuf,* 58 V.I. 117, 138 (Super. Ct. 2013) (directing that operations "continue as they have through the years," "no funds" to "be disbursed . . . without the mutual consent of [Mohammed] and [Fathi]," and "all checks . . . require two signatures."), *rev'd in part on other grounds,* 59 V.I. 841 (2013). Fathi appealed that injunction. But the Supreme Court of the Virgin Islands affirmed as to all but the form of security. *See Yusuf,* 59 V.I. at 859 (citing Fed. R. Civ. P. 65(c)).

¶5    By 2014, Mohammad's children, Waleed Hamed ("Waleed"), Waheed Hamed ("Waheed"), Mufeed Hamed ("Mufeed"), Hisham, and another Hamed-Yusuf family business, Plessen Enterprises, Inc., had been joined as parties to the Main Action. *See generally Hamed v. Yusuf,* 62 V.I. 38 (Super. Ct. 2014). Judge Brady eventually appointed a liquidating partner and adopted a wind-up plan to dissolve the Hamed-Yusuf partnership. *See Yusuf v. Hamed,* 62 V.I. 565 (2015) (*per curiam*). A judicial master was also appointed to assist the court and the parties with winding up the partnership. *See Hamed v. Yusuf,* 69 V.I. 168, 171 (Super. Ct. 2017) ("[T]he Court appointed Honorable Edgar D. Ross to serve as judicial Master in this action, to direct and oversee the winding up of the Hamed-Yusuf partnership.")

¶6    Meanwhile, a second case, *Mohammed Hamed, et al. v. Fathi Yusuf,* case number SX-12-CV-377, was filed on September 19, 2012 (the "377 Action"), two days after the Main Case was filed by

---

[2] *Hamed v. Yusuf, et al.,* case number SX-12-CV-370, was commenced on September 17, 2012, removed to the District Court on October 4, 2012, and remanded on November 16, 2012. *See generally Hamed v. Yusuf,* Civ. No. 2012-099, 2012 U.S. Dist. LEXIS 163857 (D.V.I. Nov. 16, 2012).

Mohammed, Walled, Waheed, Mufeed, and Hisham against Fathi. The complaint was later amended, however, to add Fathi's sons—Yusuf Yusuf ("Yusuf"), Maher Yusuf ("Maher"), and Nejeh Yusuf ("Nejeh")—as defendants and to add tort claims and allegations of fraud concerning monies transferred to Sixteen Plus to purchase land. *See generally Hamed v. Yusuf*, SX-12-CV-377, 2016 WL 11639571, *1-2 (V.I. Super. Ct. May 6, 2016). The September 2012 Action is currently assigned to Judge Brady and remains pending.

### *2013 Cases*

¶7　　Four more cases, each a spinoff of the Main Action, were filed in 2013 (collectively "2013 cases"). Three were filed in the St. Croix District – *United Corporation v. Waleed Hamed, et al.*, case number SX-13-CV-003, filed on January 3, 2013 (the "003 Action"), assigned to Judge Brady; *Yusuf Yusuf v. Waleed Hamed, et al.*, SX-13-CV-120, filed on April 16, 2013 (the "120 Action"), assigned to the Honorable Harold W.L. Willocks; *United Corporation v. Wadda Charriez, et al.*, case number SX-13-CV-152, filed on May 3, 2013 (the "152 Action"), initially assigned to the undersigned judicial officer. One case was filed in the St. Thomas/St. John District case, *United Corporation v. Waheed Hamed*, case number ST-13-CV-101, filed on March 5, 2013 (the "101 Action"), and assigned to the Honorable Michael C. Dunston.

¶8　　Judge Dunston initially granted judgment in part on the pleadings in the 101 Action in favor of Waheed. *See generally United Corp. v. Hamed*, ST-13-CV-101, 2013 V.I. LEXIS 50 (V.I. Super. Ct. June 24, 2013), *rev'd in part*, 64 V.I. 297 (2016). He also granted summary judgment in favor of Waheed. *See generally United Corp. v. Hamed*, ST-13-CV-101, 2014 WL 12906419 (V.I. Super. Ct. Sept. 2, 2014), *rev'd* 69 V.I. 297 (2016). United Corporation had sued Waheed as "manager of its Plaza Extra grocery store on St. Thomas, [claiming] he used United's inventory to secretly operate a competing business." *United Corp. v. Hamed*, 64 V.I. 297, 300 (2016). United alleged "that in 1995, Hamed used $70,000 of United's funds for an unauthorized purpose through a cashier's check. . . . [and] only learned of these acts in October 2011, when federal prosecutors returned financial records that were seized in 2001 as part of a tax-evasion prosecution against both United and Hamed." *Id.* Judge Dunston entered final judgment in favor of Waheed on the statute of limitations, but United appealed and prevailed. *See generally id.* ("Because there was a genuine issue of material fact regarding when the statute of limitations began to run in this case, we reverse and remand the

case for further proceedings.").

¶9     On remand Fathi, now as liquidating partner, moved to consolidate the 101 Action with the Main Action or to dismiss the 101 Action. *See generally United Corp. v. Hamed*, ST-13-CV-101, 2016 V.I. LEXIS 176, *7 (V.I. Super. Ct. Oct. 24, 2016). He also moved to consolidate the 003 Action with the Main Action. Judge Brady denied the motion as to the 003 Action and dismissed with prejudice instead because "the same claims" were pending in two cases. Fathi alerted Judge Dunston to Judge Brady's dismissal and moved to dismiss the 101 Action. *See id.* at *7 n.14. Waheed did not object but asked that dismissal be with prejudice and with an award of costs. United Corporation could have moved to consolidate much sooner, which, he argued, shows "that the sole purpose of the current proceedings in conjunction with the other actions with the same parties has been to intimidate, harass, and deplete the resources of the Hamed family." *Id.* at *8. Judge Dunston granted the dismissal "to avoid duplicative litigation or inconsistent opinions and in the interests of judicial economy." *Id.* at *12. All "parties now agree that [Waheed] is subject to the same claims asserted in this matter in the [main] case pending before Judge Brady . . . ." *Id.* at *11. But he declined to dismiss with prejudice "so as not to limit other litigation." *Id.* He also declined to award costs and attorney's fees "because all parties will continue to incur substantial litigation costs including attorney's fees . . . ." *Id.* at *12-13. Having dismissed the 101 Action, Judge Dunston denied consolidation as moot.

¶10     Meanwhile, in the 120 Action, Judge Willocks was addressing actions taken by the board of directors on behalf of Plessen Enterprises, "a Virgin Islands corporation jointly and equally held between the Hamed families and the Yusuf family." *Yusuf v. Hamed*, SX-13-CV-120, 2016 V.I. LEXIS 38, *1 (V.I. Super. Ct. Apr. 19, 2016). Yusuf brought the 120 Action as a shareholder derivative lawsuit on behalf of Plessen Enterprises against Waleed, Waheed, Mufeed, Hisham, and their corporation, Five-H Holdings, Inc., claiming conversion and unjust enrichment, and seeking an accounting for $460,000 that went missing from Plessen Enterprises' corporate accounts. Waleed moved to dismiss for failure to comply with Federal Rule of Civil Procedure 23.1, which Judge Willocks denied. *See Yusuf v. Hamed*, SX-13-CV-120, 2016 V.I. LEXIS 239, *10 (V.I. Super. Ct. Aug. 15, 2016) ("In a scenario where half of the directors of an even-numbered board are alleged to be interested and lack independence, the directors who cannot impartially consider the demand essentially have the power to prevent the corporation from filing suit. Given this reality, it would be

illogical for the Court to refuse to excuse demand for futility."). The 120 Action remains pending. However, in December 2019, Judge Willocks consolidated it *sua sponte* with the Main Action.

¶11   The 152 Action is by United Corporation against Wadda Charriez, a former Plaza Extra office manager, allegedly for misreporting hours and fraudulently obtaining over $40,000 in compensation. Charriez counterclaimed for witness intimidation under 42 U.S.C. § 1985, intentional infliction of emotional distress, defamation, and civil conspiracy, alleging pretextual firing in retaliation for her having testified in favor of Mohammed in the Main Action. She also filed a third-party complaint against Fathi for intentional infliction of emotional distress, defamation, and filing a false criminal complaint. As with the other 2013 Cases, Fathi, as liquidating partner to consolidate the 152 Action with the Main Action. Charriez opposed. This Court denied Fathi's motion without prejudice, finding the claims "somewhat related" but still "separate and distinct" from the Main Action. The 152 Action remains pending but was reassigned to Judge Meade, after the undersigned judicial officer was assigned to sit in the Complex Litigation Division.

*2014 Cases*

¶12   Two cases were filed in July 2014, both by Mohammed (collectively "the 2014 Cases"): *Hamed v. Yusuf,* case number SX-14-CV-278, filed July 7, 2014 (the "278 Action"), and initially assigned to the undersigned judicial officer; and *Hamed v. United Corporation,* case number SX-14-CV-287, filed on July 14, 2014 (the "287 Action"), and assigned randomly to Judge Brady. In the 278 Action, Mohammad sued Fathi for debt and conversion of funds allegedly from a 1994 sale of land in Estate Dorothea on St. Thomas, owned by another Hamed-Yusuf corporation, Y&S Corporation. Fathi referred to the Main Case and counterclaimed for accounting, dissolution, and wind-up of the Y&S Corporation, and conversion, unjust enrichment, and breach of fiduciary duty, among other claims. He also asked that a receiver be appointed. In the 287 Action, Mohammad sued United Corporation for a judgment declaring that he owns 50% of three plots of land in Estate Enfield Green on St. Croix, land allegedly purchased by United Corporation over Mohammed's objection. Mohammed referred to the Main Case and counterclaimed against United Corporation for slander of title and a declaratory judgment. Everyone stipulated to consolidate the 278 Action with the Main Case, which Judge Brady approved on April 15, 2016, and to consolidate the 287 Action with the Main Case, which the undersigned judicial officer also approved. The 2014 Cases remain pending

and consolidated with the Main Action.

*2015 Cases*

¶13     Three cases were filed in 2015: two criminal and one civil. The criminal cases, filed by the People of the Virgin Islands, charged Waleed, in case number SX-15-CR-352, and Mufeed, in case number SX-15-CR-353, with embezzlement of the $460,000 funds allegedly missing from Plessen Enterprises, which is at issue in the April 2013 Action that Judge Willocks recently consolidated with the Main Action. Both criminal cases were randomly assigned to Judge Willocks, who granted a motion the People filed on May 24, 2016, to dismiss.[3] The civil case, *Yusuf v. Peter's Farm Investment Corporation, et al.*, case number ST-15-CV-344, was filed in the St. Thomas/St. John Division on July 27, 2015, and assigned to the Honorable Denise M. Francois.[4] Fathi filed the July 2015 Action against Peter's Farm Investment Corporation ("Peter's Farm"), Sixteen Plus, Mohammad, Waleed, Waheed, Mufeed, and Hisham for an order, pursuant to section 193 of title 13 of the Virgin Islands Code, to compel a meeting of the shareholders of Sixteen Plus and Peter's Farm to elect directors, to dissolve both companies, and to appoint a receiver. The defendants answered, moved to sever (because different corporations were at issue), and to transfer venue to St. Croix. But on November 28, 2016, the parties jointly moved to dismiss without prejudice, which was granted on December 15, 2016. All cases filed in 2015 are no longer pending.

*2016 Cases*

¶14     Three cases were filed in 2016 (collectively "the 2016 Cases"): *Sixteen Plus Corporation v. Yousef*, case number SX-16-CV-065, filed on February 12, 2016 (the "065 Action"), initially assigned at random to the undersigned judicial officer; *Hamed, et al. v. Bank of Nova Scotia, et al.*, case number SX-16-CV-429, filed on August 1, 2016 (the "429 Action"), randomly assigned to Judge Brady; and *Hamed v. Yusuf*, case number SX-16-CV-650, filed on October 31, 2016 (the "650 Action"), also initially assigned at random to the undersigned judicial officer. Also, Waleed filed a petition to in 2016 to probate his father Mohammad's will. Mohammad had passed away on June 16, 2016. The

---

[3] Mufeed and Waleed later petitioned to expunge the charges, but the Superior Court (Mackay, J.) denied the petition on procedural grounds, finding that they should have been filed separately, not jointly. Mufeed and Waleed appealed, but the appeal was dismissed for lack of jurisdiction because the petitions were dismissed without prejudice. To date, they have not re-filed separately.

[4] The Honorable Kathleen Mackay recused because of a prior representation while in private practice.

Clerk's Office assigned *In re: Estate of Mohmmad A. Hamed*, case number SX-16-PB-076, at random to the Honorable Miguel A. Camacho.

¶15    In the 065 Action, Sixteen Plus sued Manal Mohamed Yousef ("Manal") for a judgment declaring null, void, and unenforceable a $4,500,000 mortgage that Sixteen Plus had given Manal in 1997 for seventeen properties in the U.S. Virgin Islands. Sixteen Plus alleges that Manal was a straw mortgagee because she signed the mortgage after the properties were purchased and did not advance any monies. Manal appeared, denied Sixteen Plus' allegations, and counterclaimed for debt and foreclosure. This case was referred to the Court to determine if it should be deemed complex.

¶16    In the 429 Action, Waleed initially sued Bank of Nova Scotia, but later amended the complaint to add KAC357, Inc. as a plaintiff and to add Fathi, Maher, Yusuf, and United Corporation as defendants. On his own behalf, he claims malicious prosecution and defamation against the Yusufs and United Corporation because of the 2015 criminal cases, while KAC357 asserts trade disparagement, *prima facie* tort, and civil CICO claims against the Yusufs and United Corporation. Waleed also sued Bank of Nova Scotia for negligence, claiming the bank failed to maintain proper records, which contributed to Waleed's arrest and subsequent prosecution.

¶17    And in the 650 Action, Hisham, derivatively on behalf of Sixteen Plus, sued Fathi, Isam Yousuf, and Jamil Yousef for civil CICO, conversion, and civil conspiracy claims against all defendants and against Fathi specifically also as asserted the tort of outrage, breach of fiduciary duties, and usurping corporate opportunities. Fathi moved to dismiss for failure to state a claim and for failure to join Manal, whom he claimed was an indispensable party. He also cited the 065 Action and argued that "[i]t makes no sense to try to re-litigate those same issues in this convoluted derivative case." (Def. Fathi Yusuf's Mot. to Dismiss 27, filed Jan. 9, 2017, *Hamed v. Yusuf, et al.*, SX-16-CV-650.) This is the second case referred to this Court to determine whether it should be deemed complex.

¶18    Because of a standing recusal,[5] the Clerk's Office reassigned both the 065 Action and the 650 Action. The 065 Action went to Judge Willocks, who presided over the case until September 10, 2018, when he granted a motion Sixteen Plus filed to consolidate the 065 Action with another case filed in 2017, discussed further below. For reasons unclear from the record, the 065 Action was later

---

[5] For personal reasons, the undersigned judicial officer recuses from cases in which Attorney Kye Walker appears as counsel because Attorney Walker is a close personal friend and lawyer for the undersigned.

reassigned to Judge Meade along with the 650 Action.

*2017 Cases*

¶19     Three cases were filed in 2017 (collectively "the 2017 Cases"). Waleed, Waheed, Mufeed, and Hisham filed *Hamed v. Yusuf*, case number SX-17-CV-015 ("the 015 Action"), for damages from Maher Yusuf for negligence, assault with a deadly weapon, and emotional distress and sought an injunction restraining Maher from stalking, harassing, or threatening them. The 015 Action was assigned randomly to Judge Brady. However, the Hameds voluntarily dismissed their claims without prejudice on February 23, 2017, before Maher answered or moved for summary judgment.

¶20     Fathi and United Corporation filed *Yusuf v. Estate of Hamed, et al.*, case number ST-17-CV-384, in the St. Thomas/St. John District ("the 384 Action"), against Mohammad's estate, the Mohammad A. Hamed Living Trust, and Waleed as executor and trustee. Fathi and United Corporation want to set aside transfers allegedly done fraudulently "to render Hamed insolvent to the extent that his interests in the remaining Partnership assets were insufficient to cover his portion of the Partnership liabilities, including rent owned to United . . . ." (Compl. ¶ 28.) The Clerk's Office assigned the 384 Action at random to Judge Dunston, who later consolidated it *sua sponte* with the Main Action and transferred venue to St. Croix. *See generally Yusuf v. Estate of Hamed*, ST-17-CV-384, 2018 V.I. LEXIS 41 (V.I. Super. Ct. Apr. 5, 2018). The 384 Action remains pending, assigned to Judge Brady, and consolidated with the Main Case.

¶21     Manal filed *Yousef v. Sixteen Plus Corporation*, case number SX-17-CV-342, ("the 342 Action"), for debt and foreclosure of the same mortgage at issue in the 065 Action. The Clerk's Office assigned the case at random to Judge Meade. Sixteen Plus appeared and counterclaimed against Manal and filed a third-party complaint against Fathi for intentional, wanton, extreme and outrageous conduct and to estop Fathi and Manal from foreclosing on the mortgage. This is third case referred to this Court to determine if it should be deemed complex.

*2018 Cases*

¶22     Only one case between the Hameds and the Yusufs was filed in 2018: *KAC357, Inc. v. Yusuf, et al.*, case number SX-18-CV-219, assigned randomly to Judge Meade ("the 219 Action"). KAC357, Inc., a corporation formed by the Hameds to manage the supermarket business after the partnership was dissolved, sued Yusuf and "the Hamed-Yusuf Partnership a/k/a the Plaza Extra Supermarket

Partnership," for debt and unjust enrichment allegedly for paying partnership debts for tax services, credit card bills, and utilities bills, totaling over $100,000. The parties later stipulated, and on August 15, 2018 Judge Meade approved, a request to consolidate the 219 Action with the Main Case.

|  | Case | Date Filed: | Assigned to: | Pending? | Consolidated with Another Case? |
|---|---|---|---|---|---|
| **1.** | The Main Case | September 17, 2012 | Brady | Yes | No, primary case |
| **2.** | The 377 Action | September 19, 2012 | Brady | Yes | No |
| **3.** | The 003 Action | January 8, 2013 | Brady | No | n/a |
| **4.** | The 101 Action | March 5, 2013 | Dunston | No | n/a |
| **5.** | The 120 Action | April 16, 2013 | Willocks[6] | Yes | Yes, with Main Case |
| **6.** | The 152 Action | May 3, 2013 | Meade | Yes | No |
| **7.** | The 278 Action | July 7, 2014 | Brady | Yes | Yes, with Main Case |
| **8.** | The 287 Action | July 14, 2014 | Brady | Yes | Yes, with Main Case |
| **9.** | ST-15-CV-344 | July 27, 2015 | Francois | No | n/a |
| **10.** | SX-15-CR-352 | November 20, 2015 | Willocks | No | n/a |
| **11.** | SX-15-CR-353 | November 20, 2015 | Willocks | No | n/a |
| **12.** | *The 065 Action* | *February 16, 2016* | *Meade* | *Yes* | *No, primary case.* |
| **13.** | The 429 Action | August 1, 2016 | Brady | Yes | No |
| **14.** | *The 650 Action* | *October 31, 2016* | *Meade* | *Yes* | *No, but motion to consolidate with 065 Action pending* |
| **15.** | The Hamed Probate | August 26, 2016 | Camacho | Yes | n/a |
| **16.** | The 015 Action | January 20, 2017 | Brady | No | n/a |
| **17.** | The 384 Action | August 24, 2017 | Brady | Yes | Yes, with Main Case |
| **18.** | *The 342 Action* | *August 31, 2017* | *Meade* | *Yes* | *Yes, with 065 Action* |
| **19.** | The 219 Action | June 14, 2018 | Brady | Yes | Yes, with Main Case |

## II.   DISCUSSION

¶23   In support of designating these cases as complex, Hisham and Sixteen Plus assert that "these cases appear to fit into the definition of being a 'presumptive' matter pursuant to Rule 92(b)(4), as these cases certainly involve 'investment losses involving multiple parties.'" (Hisham-Sixteen Plus Corp. Br. 12, filed Sept. 3, 2019 (quoting V.I. R. Civ. P. 92(b)(4)) (hereinafter "Hisham Br.").) Hisham and Sixteen Plus explain that "Sixteen Plus was formed as a corporation specifically to purchase a

---

[6] For reasons unclear from the record, the April 2013 Action remains assigned to Judge Willocks, despite his December 2019 Order consolidating it with the Main Action, which would have reassigned the case to Judge Brady.

300 plus acre parcel of land on the South shore of St. Croix, often referred to as Diamond Keturah . . . ." (Hisham Br. 5.) Fathi's family and Mohammed's family each owned 50% of Sixteen Plus' stock. *See id.* Fathi and Mohammed decided to buy the Diamond Keturah property in 1997. But, according to Hisham, "Fathi . . . did not want either the Government of the Virgin Islands or . . . [the bank] to know the source of the funds he was using . . . ." *Id.*

¶24     Hisham alleges that Fathi "was secretly diverting unreported cash from the Plaza Extra Supermarket to Sixteen Plus as part of a criminal money laundering effort." *Id.* at 5-6. Again, according to Hisham:

> Fathi . . . conspired with Isam . . . his nephew who lived on St. Martin, to launder in excess of $4,000,000 in unreported, untaxed partnership funds to St. Martin from the Plaza Extra Supermarket operations—so that they could then wire these funds back to a Sixteen Plus account at [Bank of Nova Scotia or] BNS in order for Sixteen Plus to use these "laundered" funds to purchase the Land. To accomplish this task, Fathi Yusuf had large sums of "skimmed" cash delivered to Isam . . . in St. Martin, who thereafter deposited those funds into various accounts in St. Martin. Fathi . . . and Isam . . . then transferred the partnership's funds by wire to an account in the name of Sixteen Plus at BNS on St. Croix. The transfers (which exceeded $4,000,000) to Sixteen Plus' account at BNS took place between February 13th and September 4th of 1997.
>
> To further cover up the partnership source of these funds, as well as to try to shelter Isam . . . from exposure to criminal consequences from the effort to launder and use the cash from the partnership's supermarkets, Fathi . . . and Isam . . . agreed to create a "sham" note and mortgage for the transaction, naming Fathi['s] . . . niece who then lived in St. Martin, Manal . . . as the sham mortgagee. She appears to now live on the West Bank Territory adjacent to Israel.

*Id.* at 6. "Then, in 2003, the Federal Government filed felony money laundering and tax evasion criminal charges against . . . Isam . . . and Fathi . . . . regarding th[e] laundering of funds . . . to St. Martin to buy the Sixteen Plus Land." *Id.* at 8 (emphasis omitted). The United States placed a lien on the Diamond Keturah property that was later removed through a plea deal. Hisham claims that Fathi and Isam subsequently "retained counsel on St. Martin to send a demand to Sixteen Plus – for payment of the sham note and mortgage Sixteen Plus allegedly owed to Manal . . . ." *Id.* at 10. But "St. Martin counsel did not disclose to Sixteen Plus or the Hameds that Fathi . . . was the person personally directing the demand." *Id.* Fathi had obtained a power of attorney from Manal in 2010 "[t]o do and perform all and every act and thing whatsoever" regarding her interest in seventeen parcels of land in the U.S. Virgin Islands. *Id.*, Ex. 2. Thus, Hisham, on behalf of Sixteen Plus, seeks

"compensatory damages of multiple losses of the sale of the [Diamond Keturah] Land at the highest and best sales value, including treble damages where permitted by law ... [and] [p]unitive damages if warranted by the facts and applicable law." (First Am. Compl. 23, filed Dec. 23, 2016, *Hisham, et al v. Yusuf, et al.*, SX-16-CV-650.)

¶25 Based on these allegations, Hisham contends that these cases involve investment losses. But during oral argument, the Court pushed back, noting neither the 065 Action, the 342 Action, nor the 650 Action (collectively the "Sixteen Plus Cases") involve *"securities claims."* V.I. R. Civ. P. 92(b)(4) (emphasis added). If each case with an investment loss was presumptively-complex, the Court explained, all mortgage foreclosure cases would have to be transferred to the Complex Litigation Division, for example. Instead, the rule appears to contemplate shareholder lawsuits or losses from investments in stocks, bonds, or other large-scale investments.[7] But Hisham and Sixteen Plus countered that that not all investments are publicly-funded and that private equity, of the type involved here, is increasingly a source of investment funds. *Accord Alpha Media Resort Inv. Cases*, 252 Cal. Rptr. 3d 746, 750 (Ct. App. 2019) ("These six actions involve ... 25 defendants, ... [who] pursued an international investment scheme through which they fraudulently induced hundreds of individuals and organizations to invest in two resort properties in the Dominican Republic."); *see also id.* at 754 (noting that the prior judge found each case separately qualified as complex (citing Ca. Rules of Ct., R. 3.400)).

¶26 Fathi denies Hisham's allegations and opposes designating the Sixteen Plus Cases as complex. Fathi contends that "the allegations relate to the formation of the mortgage and assent to same, at best, the allegations create factual issues to be determined by a trier of fact as opposed to a matter before the Complex Litigation Division requiring additional or specialized attention and care." (Def. Fathi Yusuf's Opp'n to Transfer to Complex Litig. Div. 7, filed Sept. 4, 2019.) But Fathi also argues, in the alternative, that "if the matter is transferred or if Judge Meade requires assistance ... a special master could be appointed to address these claims, either in the context of the Complex Litigation Division or directly from Judge Meade." *Id.* "Pursuant to V.I. R. Civ. P. 95, if a matter has been assigned to the Complex Litigation Division, a master may be appointed and assigned to assist with the cases," Fathi notes. *Id.*

---

[7] Rule 92 of the Virgin Islands Rules of Civil Procedure was patterned in part after California Court Rule 3.400.

¶27    Manal, Isam, and Jamil also oppose transfer to the Complex Litigation Division. But they focus on the language of the rules. They contend that the Sixteen Plus Cases "are not presumptively complex pursuant to Rule 92(b) . . . ." (Yousef/Yousufs Br. re Position on Complex Litig. Designation 4, filed Sept. 3, 2019.) If a case is not presumptively complex, "the Court then considers the factors identified in Rule 92(c) in determining whether the case warrants designation as a complex case." *Id.* But none of those factors are present here either, they contend.

¶28    Having considered the arguments of counsel, and reviewed the pleadings of the Sixteen Plus Cases, the Court concludes they should not be designated complex, but for reasons different than those cited by the parties. Cases are complex when they "require[] exceptional judicial management . . . " V.I. R Civ. P. 92(a). "[C]lass actions," V.I. R. Civ. P. 92(b)(5), "securities claims or investment losses involving multiple parties," V.I. R. Civ. P. 92(b)(4), and "environmental tort claims, mass tort claims, or toxic tort claims commenced by . . . as one action or multiple, individual actions," V.I. R. Civ. P. 92(b)(1), are several types of cases that are presumptively complex. The Sixteen Plus Cases are not presumptively complex. They do not involve environmental, toxic, or mass tort claims, construction or design defect claims, or claims arising out of a natural disaster or other territory- or island-wide event. *See* V.I. R. Civ. P. 92(a)(1)-(3). They do not involve class allegations, or contribution, indemnification, or insurances claims arising out of other presumptively-complex cases. The Sixteen Plus Cases do not fit into any of the presumptively complex categories, except perhaps one—investment losses. Here, the Court does find Hisham's arguments persuasive. But even if the type of losses alleged here do fit within the type of case envisioned by the rule, these cases do not involve "investment losses *by multiple parties.*" V.I. R. Civ. P. 92(b)(4) (emphasis added).

¶29    Other kinds of cases can be complex, however. Here the Court agrees with Manal, Isam, and Jamil that the Court looks to Rule 92(c) for guidance to determine whether a non-presumptively complex case should be designated as complex. A case can be deemed complex if it "involves a large number of parties," V.I. R. Civ. P. 92(c)(1), or when "coordinated discovery [across multiple cases] would be advantageous." V.I. R. Civ. P. 92(c)(2). Cases can also be complex if they "require specialized expertise and case processing," *id.*, or when "issues of insurance, limits on assets and potential bankruptcy can be best addressed in coordinated proceedings." *Id.* However, except for presumptively complex cases, *see* V.I. R. Civ. P. 92(b)(1)-(6), or cases that the parties designate as

complex, *cf.* V.I. R. Civ. P. 10(e), a case will not be deemed complex unless it requires exceptional judicial management. The Court weighs "whether management of the case on the Complex Litigation Division [d]ocket may unreasonably delay the case, increase expense, complicate the action, or unfairly prejudice a party," V.I. R Civ. P. 92(c)(2), with "whether the cases require specialized expertise and case processing by the . . . Complex Litigation Division judge and staff . . . [for] the efficient utilization of judicial resources . . . ." *Id.*

¶30 There is no doubt that all the Hamed-Yusuf cases are related. "Different cases can be related . . . ." *Abraham v. St. Croix Renaissance Grp. LLLP*, 70 V.I. 84, 105 (Super. Ct. 2019). The 219 Action, brought by KAC357, involves debt and unjust enrichment claims for monies advanced to the Hamed-Yusuf partnership that were not reimbursed. The 152 Action allegedly arose because Charriez testified in the Main Case. The 2014 Cases involve land owned by the Hamed and Yusuf families and their corporations and a determination of the value of the land. In some respects, the 2014 Cases are similar to the Sixteen Plus Cases, but cases have been consolidated with the Main Case. In fact, only the Sixteen Plus Cases, the 377 Action (the second Hamed-Yusuf case, which also concerns Sixteen Plus), the 152 Action, and the 429 Action (involving KAC357, Bank of Nova Scotia, and the circumstances leading up to the 2015 criminal cases) have not been consolidated with the Main Action.

¶31 Courts try to avoid having different judges preside over related cases because of the "'duplication of labor. . . .'" *Abraham*, 70 V.I. at 105 (citation omitted). For this reason, "[m]any courts have promulgated rules that require counsel to identify related cases." *Id.* Unfortunately, "the Virgin Islands Judiciary has not promulgated a rule mandating that counsel identify related cases at the trial court level." *Id.* While consolidation may not have been the best tool to get the Hamed-Yusuf cases before the same judge, since the cases do not necessarily involve "a common question of law or fact," V.I. R. Civ. P. 42(a), it was the only tool available. And while six cases are no longer pending, the remaining thirteen, including the Sixteen Plus Cases, are still very active and will "require[] exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case[s], keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." V.I. R. Civ. P. 92(a).

> When two strangers go into business, you usually have each one requiring formal contracts, formal statements, formal deposits, and everything of the kind; but usually

when two friends go into business, and where it becomes one happy family, so many of these things are omitted; and when they do fall out . . . there arises bitterness and difficulties which make it the most difficult type of case to try.

*Stoner v. Bellows*, 2 V.I. 172, 174-75 (D.V.I. 1951). Such difficulties are compounded when the friends become family and the business becomes a family business. The break-up of the Hamed-Yusuf friendship and the dissolution of their partnership has already required exceptional judicial management, warranting the appointing of a liquidating partner and a judicial master. Even though the cases do not fit within a presumptively-complex category, they clearly could qualify as complex.

¶32    It might be just, efficient, and cost-effective to reassign all the cases to the same judge. But only the Sixteen Plus Cases were referred to this Court to determine whether they are complex. And for that reason, the Court concludes that transferring fewer than all the cases to the Complex Litigation Division would not be "the most just, efficient, and cost-effective for the Court, counsel, and the parties." *Edwards v. Hess Oil V.I. Corp.*, 66 V.I. 218, 232 (Super. Ct. 2017); *accord* V.I. R. Civ. P. 1 ("These rules should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Judge Brady is currently presiding over the 377 Action and the Main Case and the five cases consolidated under it, Judge Meade is presiding over the 152 Action and the Sixteen Plus Cases. All the cases might impact the probate Magistrate Judge Camacho is presiding over if claims must be filed against Mohammed's estate. To single out three of these cases and designate them as complex will only lead to "unreasonably delay . . . increase expense, [and] complicate the action[s]." V.I. R. Civ. P. 92(c)(2).

### III.    CONCLUSION

¶33    For the reasons stated above, the Court finds that the Sixteen Plus Cases should not be designated as complex and returns them to the Clerk's Office. Appropriate orders follow.

**Date:** March 16, 2020

**ROBERT A. MOLLOY**
Judge of the Superior Court

**ATTEST:**
TAMARA CHARLES
Clerk of the Court

By: _____
    Court Clerk
Dated: _____3/16/2020_____